**UNITED STATES of America**

v.

**Ceasar David MONTEVECCHIO.**

**Crim. No. 86–1 Erie.**

United States District Court,
W.D. Pennsylvania.

Sept. 3, 1986.

Judith Fitzpatrick, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiff.

Leonard G. Ambrose III, Erie, Pa., for defendant.

OPINION

GERALD J. WEBER, District Judge.

The United States has moved to disqualify counsel for the defendant. This motion was made on the complaint of two of the government's witnesses that they had prior attorney-client relationships with present defense counsel and that questions posed on cross-examination by Attorney Ambrose, defense counsel, may lead to the disclosure of privileged information, to which they would raise the privilege and refuse to answer.

The government claims that the testimony of these two witnesses is critical to a question raised by defendant's motion to suppress evidence obtained by a recording device worn by one of the government's witnesses, Esper, and attached in the presence of Detective Grassi. The defendant's motion to suppress is based on the alleged involuntary nature of Esper's cooperation. Esper and Grassi have raised the claim of privilege. The credibility of these witnesses will be a prime issue for the defense.

We must first note that we treat this motion differently from those in which a defendant raises the question of competency of counsel in a post-conviction motion. We see hundreds of those and in the great majority of cases the claim of inadequacy of counsel is raised. Such matters are determined by a showing of actual prejudice. On the other hand when we examine such matters on pre-trial motions, it is the potential of conflict of interests that is a determining factor.

This matter has a long history which, unfortunately, we must recite briefly to put the present matter in proper perspective. In 1983, Montevecchio, the present defendant, was charged by several indictments involving a series of burglaries, and on one possession of narcotics charge. The indictments were brought in the Court of Common Pleas of Erie County, Pennsylvania. Many preliminary matters were raised at pre-trial, which generated a large amount of media publicity. Some of this involved the security precautions surrounding the appearances of the witness Esper, who was held in protective custody. Because of adverse prejudicial publicity, the state court ordered a change of venue for trial. The witnesses Esper and Grassi testified in pre-trial hearings or depositions during this period. Early in this case the Erie County District Attorney filed a motion to disqualify the defense counsel, Attorney Ambrose, who is the present defense counsel. This was denied. Finally, the state charges were all dismissed for violation of the Pennsylvania speedy trial provisions on February 13, 1986. This discharge was hotly contested, and produced another wave of media publicity, particularly critical of the court system and the prosecutor's office.

The instant federal indictment was filed July 9, 1986 and contains a single count, possession of cocaine with intent to distribute on July 28, 1983.

There is a motion for change of venue which the court will grant by a transfer of the case to the Pittsburgh seat of this court. Several other pre-trial motions are pending which must await the resolution of the present motion.

We have received briefs on this motion and have held oral argument. The facts are largely undisputed and we base our findings upon the statements of defense counsel.

### The Witness Esper

The government witness Esper was involved with the defendant Montevecchio in the matters concerning the series of burglaries. He became a government informant and was used to collect further evidence including that which was recorded.

Attorney Ambrose represented Esper from February to April, 1978 in a criminal complaint instituted by a private complainant approved by the district attorney on a charge of theft by deception involving a check. A hearing was held before a district magistrate and the complaint was dropped by the prosecutrix upon Esper's agreement to make restitution.

A second instance of representation of Esper by Attorney Ambrose involved charges against Esper of obtaining drugs from a pharmacy without a proper prescription. Attorney Ambrose states that he had two consultations with Esper about the charges in sufficient depth so that he could estimate the extent of work involved to determine the fee. A preliminary hearing before a district magistrate was waived by Esper, who gave the name of Attorney Ambrose as his counsel, which was entered on the magistrate's return to the district attorney. After Attorney Ambrose quoted his fee, Esper secured other counsel and was ultimately acquitted of the charges.

A third event which Esper related to the United States Attorney, which Attorney Ambrose denies, was a claim that in 1979 Esper consulted with Ambrose relating to possible charges being brought against him for breaking into and stealing the contents of an automobile. No charges were brought.

Esper claims that he disclosed information to Attorney Ambrose during these consultations which were privileged and for

which he claims an attorney client privilege in any cross-examination of him concluded by Attorney Ambrose.

### The Witness Grassi

Grassi is a city police officer who is a critical prosecution witness on the voluntary nature of Esper's cooperation, particularly in the matter of wearing a body recorder in meetings with the defendant. Grassi claims that he consulted Attorney Ambrose in 1981 regarding possible representation in a gambling investigation. Attorney Ambrose admits that he had two consultations in sufficient depth to determine the cost of representation. Attorney Ambrose states that as a result of the conferences he did nothing other than advise Grassi not to make any statements and/or comments to anyone. There is nothing to indicate that any prosecution ensued.

Both witnesses have informed the United States Attorney that they provided privileged information to Attorney Ambrose during their consultations which Attorney Ambrose could use against them during the course of cross-examination.

Neither the court nor the United States Attorney is aware of the contents of the privileged communication, nor can we compel its disclosure.

### The Arguments

Attorney Ambrose asserts that he has cross-examined both Esper and Grassi extensively in the state court pretrial proceedings and no claim of privilege was raised. We note that most of the state court proceedings involved the multiple burglary charges. While there was a state court proceeding to remove Attorney Ambrose, which was denied, there is no evidence before us that either of the witnesses waived the privilege nor that they were ever advised that they could still exert the privilege despite the court's denial of the motion to remove counsel.

■ Attorney Ambrose argues that he only represented Esper one time, in the 1978 bad check charge, and that the other events do not establish an attorney-client

relationship. We think otherwise. We believe that any communication from a prospective client to an attorney at law with regard to prospective representation or to secure advice, even with regard to the probable cost of such representation, is privileged.

### Waiver by Defendant

■ Defense counsel states that defendant will waive the conflict. We are confident that there is no way in which defendant can make a valid waiver of the potential conflict. A judge can never fully explain to a defendant all of the permutations and combinations of circumstances of the evidence to be presented; he is unaware of the details of the case, nor can he know the facts or inferences to be drawn therefrom. He is unaware of the strategy of the government and defense and he cannot inquire into the defense either in open court or in camera. The trial judge, therefore, cannot adequately advise the defendant. See *United States v. Garafola*, 428 F.Supp. 620 (D.N.J.1977); *United States v. Dolan*, 570 F.2d 1177 (3d Cir.1978).

A waiver of a constitutional right must be made knowingly, intelligently, and with a full awareness of the likely consequences of the waiver; *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The right to effective assistance of counsel is too fundamental to allow courts to indulge in speculation as to the amount of prejudice involved. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

In *Glasser* the defendant was an experienced trial lawyer who had served four years as an Assistant United States Attorney prosecuting criminal cases. Nevertheless the court found no valid waiver of his rights. As one commentator has noted, "In view of the conclusion in *Glasser*, it is difficult to imagine a case in which a waiver would be invulnerable to challenge. Geer: *Representation of Multiple Defendants*, 62 Minn.L.R. 119, 141 (1978).

We find that an effective waiver by defendant would be impossible to obtain.

*Other Considerations*

■ We are well aware that Attorney Ambrose is an exceptionally able trial counsel and that he has spent over three years in the representation of this client in the state court and in this court. He is very well prepared with respect to all of the intricacies of the case, although the present federal charge represents only one rather isolated incident among the series of events involved in the state charge.

This factor weighs on the side of defendant's chief argument, the right to representation by counsel of one's own choice, a right of constitutional dimensions. *United States v. Rankin,* 779 F.2d 956 (3d Cir. 1986).

In *United States v. Dolan,* 570 F.2d 1177 (3d Cir.1978), the court stated that "although the right to counsel is absolute, there is no right to a particular counsel," p. 1182; and, "the sixth amendment should not be interpreted to allow a defendant to sanction a lawyer's breach of ethical duties, when such duties serve the public interest as well as the client's." P. 1183.

Most of the decided cases deal with counsel's representation or former representation of co-defendants, and in particular co-defendants who become government witnesses. Furthermore, they are mostly concerned with post trial applications of convicted defendants for relief where the courts have noted that the representation was questionable but have denied the relief because of a failure to show prejudice, *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). But if defendant shows that a conflict of interest actually affected his representation, he need not demonstrate prejudice to obtain relief, the conflict itself demonstrating the denial of a right to have effective assistance of counsel. *United States v. Dolan, supra,* p. 1184.

Once actual conflict of interest is shown, a showing of prejudice is not necessary. *United States v. Alvarez,* 580 F.2d 1251 (5th Cir.1978).

In *Dolan, supra,* the trial court had found that Dolan's lawyer could not effectively cross-examine his former client, Garofola,—now an important prosecution witness—without intruding into matters protected by the attorney client privilege. The trial court found that there is, in fact, a conflict of interest. The Court of Appeals held that where a trial court finds an actual conflict which impairs the ability of a criminal defendant's chosen counsel to conform to the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of defendant.

> Such representation not only creates a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicating the defendants comprehension of the waiver.

570 F.2d 1177, at 1184.

In those cases involving multiple representation or prior representation of co-defendants, the issue is clearer. Here defendant's counsel represented critical government witnesses in prior and apparently unrelated matters. With respect to Esper, except for his early cooperation and services as an informant he might well have been a co-defendant.

The credibility of these witnesses will be under attack and we are informed that the government relies heavily on their testimony. Those witnesses have served warning that they will claim the attorney client privilege with respect to questions posed to them by defense counsel on the witness stand. In such a situation the interests of justice could be frustrated on both sides; the public interest in a fair trial, and the defendant's interest if defense counsel is unable to cross examine two of the government's critical witnesses.

If this does not constitute an actual conflict of interest, it certainly reveals the

potential for conflict. As in *United States ex rel. Williamson v. LaVallee*, 282 F.Supp. 968, the court noted that it could not determine whether prejudice ensued but that cross-examination of the witness might be impeded by the fact that the attorney had learned confidential information from his client-witness which could not be revealed, and therefore the conflict was apparent.

We conclude therefore that the appearance of conflict and the potential for conflict are sufficient to require the removal of counsel and we will so order.

Because we believe that orders disqualifying counsel are immediately appealable (*see, United States v. Cunningham*, 672 F.2d 1064 (2nd Cir.1982)), we will delay consideration of the other pending pre-trial motions until the appearance of new counsel is entered or until notice of appeal is filed and the matter is determined on appeal. We request counsel, in the event of appeal, to ask for expedited consideration of any appeal because the delays in the prior state prosecution have generated a substantial body of public criticism of the system of justice.