**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Mark Eric WHEAT,**
**Defendant-Appellant.**

No. 86–5002.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1986.

Decided April 2, 1987.

As Amended May 11, 1987.

John J. Cleary, San Diego, Cal., for defendant-appellant.

Roger W. Haines, Jr., San Diego, Cal., for plaintiff-appellee.

Before BROWNING, GOODWIN and FARRIS, Circuit Judges.

GOODWIN, Circuit Judge:

Mark Eric Wheat appeals his convictions for conspiracy to possess in excess of 1,000 pounds of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and for possessing marijuana

with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Wheat was one of 14 defendants charged on counts relating to a marijuana importation and distribution scheme that spanned nearly three years. Wheat stored massive marijuana deliveries—as much as a ton or more at a time—at his house in Escondido, California.

Wheat contends: (1) that the trial court erred in denying his motion to substitute his attorney when he waived his right to conflict-free representation; (2) that he had a right to be present at, or to be informed about, the district judge's ex parte discussion with Wheat's attorney regarding that attorney's drug and alcohol abuse; and, (3) that package-deal plea bargains should be declared illegal.

## I. Substitution of Attorney

The trial court balanced two sixth amendment rights: (1) the qualified right to be represented by counsel of one's choice; (2) and the right to a criminal defense conducted by an attorney who is free of conflicts of interest. The codefendants agreed to waive their rights to contest any potential or actual conflicts of interest that developed. The trial court did not abuse its discretion in overriding the waiver and denying Wheat's substitution motion.

Wheat moved to replace his original attorney of choice with Eugene Iredale, or, in the alternative, to permit Iredale to associate himself with the original attorney on the case. The government objected to the substitution on conflict of interest grounds, noting that Iredale represented two of Wheat's codefendants. At no time did Wheat contend that he wanted Iredale because he was dissatisfied with his present attorney. Rather, the record indicates that Wheat was impressed by Iredale's representation of Wheat's codefendants, and desired to benefit from his expertise.

Wheat first made the substitution request five days before trial. The request was made immediately after Javier Bravo (one of the two codefendants represented by Iredale) pleaded guilty to count one of the superseding indictment. The parties dispute whether the government originally planned to call Bravo as a witness in Wheat's trial or decided to call Bravo in order to manufacture conflicts to keep Iredale out of Wheat's case. Iredale maintained that no conflict would arise because Bravo's testimony—that he never knew or met Wheat in the marijuana distribution network—would not be adverse to Wheat.

The government also expressed concern over the potential conflict of interest regarding Iredale's other client, Juvenal Gomez-Barajas. Gomez-Barajas had already been acquitted on drug charges overlapping with the charges against Wheat. Gomez-Barajas had pleaded guilty, however, to charges of tax evasion and illegal importation of merchandise. The government contended that a conflict between Wheat and Gomez-Barajas could arise if Gomez-Barajas withdrew his guilty plea before sentencing, and then proceeded to trial. The prosecution contended that Wheat might have to testify about Gomez-Barajas' marijuana dealings relating to the income tax evasion charge on the question of Gomez-Barajas' net worth. Finally, the government noted that witnesses in Gomez-Barajas' marijuana trial had referred to Wheat more than 30 times, thus demonstrating a relationship between Gomez-Barajas and Wheat.

Despite the potential conflicts, Wheat, Gomez-Barajas, and Bravo agreed to waive any rights arising out of any potential or actual conflicts of interest. The court overrode these purported waivers and refused to permit Iredale to represent Wheat. Wheat proceeded to trial with his original lawyer and was convicted on six counts.

**Discussion**

■ Within sixth amendment limits, substitution of counsel is discretionary. We review for abuse of that discretion. *United States v. Whaley,* 788 F.2d 581, 583 (9th Cir.1986).

■ The sixth amendment provides that criminal defendants who can afford retained counsel have a qualified right to counsel of their choice. *United States v. Ray,* 731 F.2d 1361, 1365 (9th Cir.1984). The right is qualified by the need to avoid

undermining public confidence in the integrity of the legal system. *United States v. Washington,* 797 F.2d 1461, 1465 (9th Cir. 1986). Wrongful denial of this qualified right is reversible error even without a showing of prejudice. *Washington,* 797 F.2d at 1467. "A facet of the right to counsel of choice is the defendant's ability to waive his right to the assistance of counsel unhindered by a conflict of interest, provided that waiver is knowing and intelligent." *United States v. Agosto,* 675 F.2d 965, 969–70 (8th Cir.), *cert. denied,* 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982).

■ But the sixth amendment also guarantees each criminal defendant the right to assistance of counsel "unhindered by a conflict of interests." *Cuyler v. Sullivan,* 446 U.S. 335, 355, 100 S.Ct. 1708, 1722, 64 L.Ed.2d 333 (1980) (Marshall, J., concurring in part and dissenting in part), quoting *Holloway v. Arkansas,* 435 U.S. 475, 483 n. 5, 98 S.Ct. 1173, 1178 n. 5, 55 L.Ed.2d 426 (1978)).

The trial court was put in the position of balancing the two concerns—the right to representation free of conflicts of interest, and the right to representation of one's choice—knowing that denial of either of these would result in an appeal assigning the ruling as reversible error. Reviewing courts should be especially wary of complaints of error when the defendant's substitution request places trial courts in a position to be whipsawed in the expectation of a guaranteed error no matter which way the courts rule. *Cf United States v. Jones,* 512 F.2d 347, 350–51 (9th Cir.1975). The court justifiably deferred to strong sixth amendment interests in guarding against potential conflicts that were likely to develop.

### A. *Was there a Potential Conflict of Interest?*

Most appeals involving conflict of interest claims by criminal codefendants arise following trial. *See Agosto,* 675 F.2d at 970. This case, however, deals with the conflict of interest concern prospectively, when the trial court has power to avoid potential conflicts that might otherwise result in reversible ineffective assistance of counsel. We recognize that determining whether codefendants' interests will be adverse is difficult before trial. *See United States v. Dolan,* 570 F.2d 1177, 1181–82 (3rd Cir.1978).

■ In successive representation, conflicts of interest arise if an attorney reveals privileged communications of the former client, or otherwise divides his loyalties so that he is incapable of diligently representing his client. *See Trone v. Smith,* 621 F.2d 994, 998–99 (9th Cir.1980). The government argues that such conflicts were either actually present or very likely to develop had Iredale represented Wheat.

Wheat argues that any alleged conflicts were speculative at most. He argues that his sixth amendment right to counsel of choice demands closer scrutiny of the alleged conflicts, relying on *Washington,* 797 F.2d 1461 (decided after Wheat's conviction). In *Washington,* we vacated a ruling disqualifying retained counsel on conflict of interest grounds, and remanded for a finding of fact on whether one of the retained lawyers actually received confidential information. *Id.* at 1466–67.

■ We need not remand this case for an evidentiary hearing, however, because Wheat does not deny that Iredale received privileged information from his two codefendants; Iredale simply said he did not intend to use any of the privileged communications from Bravo in cross-examination. The mere possession of a former client's and codefendant's privileged communications poses the precise potential for conflict that the trial court had the discretion to avoid in this instance. Iredale could have misused those communications in cross-examining Bravo and Gomez-Barajas in Wheat's trial, which is a matter "substantially related" to the proceedings involving his codefendants.[1] Likewise, had Iredale represented Wheat he could have received

---

1. A substantial relationship between successive representations often triggers concerns about divided loyalties and conflicts of interest. *See*

*Trone,* 621 F.2d at 999; Model Rules of Professional Conduct Rule 1.9 (1983).

privileged information from Wheat that could have been misused in later representations of Gomez-Barajas and Bravo. Hence, we find there was a significant potential for misuse of privileged information.

Wheat next argues that Iredale's representation would not have created any conflicts because the interests of the three codefendants were not adverse. The government disputes this, pointing out that Bravo's testimony corroborated two overt acts from Wheat's indictment. At oral argument the assistant United States attorney said that Wheat's original attorney implied that Gomez-Barajas was much more culpable in the marijuana distribution scheme than Wheat. Because of Iredale's continuing ethical duty to his client, Gomez-Barajas, he would not have been free to make the same implications had he represented Wheat. This argument strongly supports the trial court's action.

Wheat's failure to move for substitution until five days before trial makes it even clearer that the trial court did not abuse its discretion by denying the substitution request. See United States v. Michelson, 559 F.2d 567, 571–72 (9th Cir.1977) (trial court did not abuse its discretion in denying a request to remove defendant's attorney, because of alleged nonsympathy as to one of defendant's defenses, when the request was made on the Friday preceding the Monday set for trial); United States v. Harris, 501 F.2d 1, 5 (9th Cir.1974).

### B. Waiver of Right to Conflict-Free Representation

Ninth Circuit waiver cases either involve the trial court's acceptance of the defendant's knowing and intelligent waiver, United States v. Partin, 601 F.2d 1000, 1007 (9th Cir.1979), cert. denied, 446 U.S. 964, 100 S.Ct. 2939, 64 L.Ed.2d 822 (1980), or the disqualification of counsel in the absence of waiver where a probability of conflicts exists. See, e.g., United States v. Vargas-Martinez, 569 F.2d 1102, 1104 (9th Cir.1978).

The Supreme Court in Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), held that the sixth amendment demands that a trial court may not ignore counsel's repeated complaints about conflicts of interest, without either appointing separate counsel or determining that the conflict risk is too remote to warrant separate counsel. Id. at 484, 98 S.Ct. at 1178–79. This holding implies that the trial court has the discretion to deny a substitution request on conflict grounds even if counsel assures the court that no conflict exists and the codefendants waive their conflicts claims. The court may properly exercise this power partly because defendants may not be able to appreciate the significance of a waiver in light of potential conflicts. Dolan, 570 F.2d at 1181. See generally Geer, Representation of Multiple Criminal Defendants: Conflicts of Interest and the Professional Responsibilities of the Defense Attorney, 62 Minn.L. Rev. 119, 140–42 (1978); J. Burkoff, Criminal Defense Ethics Law and Liability, §§ 7.3, 8.3 (1986). We are also concerned about securing a knowing waiver from codefendants represented by one attorney, because of possible manipulation of testimony resulting from agreements between various clients, lawyers, and possible third persons not before the court. "Because the conflicts are often subtle it is not enough to rely upon counsel, who may not be totally disinterested, to make sure that each of his joint clients has made an effective waiver." United States v. Lawriw, 568 F.2d 98, 104 (8th Cir.1977), cert. denied, 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978).

The cases are not unanimous about when a trial court may override a defendant's knowing waiver. The Third Circuit has held that a trial court may override a waiver when the potential of an actual conflict of interest is "very likely," but not where the potential is "highly speculative." United States v. Flanagan, 679 F.2d 1072, 1076 (3d Cir.1982), rev'd on other grounds, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984); [2] Dolan, 570 F.2d at 1184 (actual

---

**2.** We agree with the Third Circuit that the right

to proceed pro se (recognized in Faretta v. Cali-

conflict of interest will outweigh defendant's waiver).[3] In the Sixth Circuit the standard is higher. Even where there is an actual conflict, a trial court should override a defendant's knowing waiver only in "compelling circumstances." *United States v. Reese*, 699 F.2d 803, 805 (6th Cir.1983).

 We hold that trial courts have some discretion to override defendants' waivers of the right to conflict-free representation. We need not decide here whether the potential for an actual conflict must be "very likely," rather than "highly speculative." *Flanagan*, 679 F.2d at 1076. Here, the potential that Iredale's defense of Wheat would create a conflict easily met the "very likely" test. The trial court, therefore, did not abuse its discretion in refusing Wheat's substitution request.

Our holding encourages trial courts' good practice in inquiring as to possible conflicts in situations of multiple defendant representation. *See Willis v. United States*, 614 F.2d 1200, 1206 (9th Cir.1979); Fed.R.Crim.P. 44(c). The inquiry and warning process would have little meaning if the trial court had no discretion to determine that potential conflicts outweighed the defendant's right to counsel of choice.

## II. Appellant's Absence During Judge's Conference With Counsel

Wheat argues that he was denied his fifth and sixth amendment rights when, three months before trial, the judge conducted an ex parte, in-chambers conference with Wheat's attorney regarding the attorney's past narcotics and alcohol abuse. Wheat did not learn of the conference until after the trial, even though he knew of the attorney's past abuses. He now contends that he would have changed counsel had he known of the conference, out of concern

that his attorney would be unduly intimidated by the judge. He cites Rule 43(a) of the Federal Rules of Criminal Procedure: "[t]he defendant shall be present at the arraignment, at the time of the plea, at every stage of trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule." The conference with the attorney certainly was not within the categories of arraignment, plea, trial, impaneling the jury or sentencing. The question is whether it injected reversible error into the record.

 The presence requirement of Rule 43 "is broader than the sixth amendment right to confrontation and the fifth amendment due process rights." *United States v. Christopher*, 700 F.2d 1253, 1261–62 (9th Cir.), *cert. denied* 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983). Due process does not assure the privilege of presence when presence would be useless. *Id.* at 1262 (citations omitted). A violation of Rule 43 does not require reversal unless a reasonable possibility of prejudice is shown. *United States v. Birges*, 723 F.2d 666, 670 (9th Cir.1984). In this case, Wheat's only claim of prejudice is that he would have sought a different attorney had he known of the judge's conference because he would have been concerned that his attorney might be unduly intimidated by the judge.

 We recommend that judges in such a situation inform both the defendant and opposing counsel and create a record of such conferences. Wheat, however, has alleged no facts indicating prejudice from an intimidated, less-than-diligent defense. He merely speculates that he might have chosen other counsel had he known of the trial judge's conference with his attorney.

---

*fornia*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)) "does not imply a constitutional right to waive conflict-free representation by counsel. A defendant's decision to proceed with joint counsel in the face of possible conflicts implicates more considerations and affects more people than does a decision to proceed *pro se*." *Flanagan*, 679 F.2d at 1076 n. 5.

**3.** Both *Flanagan* and *Dolan* involved disqualification in the simultaneous representation of criminal defendants, while the instant case is one of successive representation. We see no reason to distinguish between the successive and simultaneous representation cases on courts' power to override codefendants' waivers, as the rationale and policies are virtually identical. *See* Burkoff, § 8.3(b) at 8–15.

Therefore, his absence from the conference did not prejudice him, and we find that the error, if any, was harmless.

## III. Package-deal Plea Bargain

■ Finally, Wheat argues that "package-deal" plea bargains—in which the prosecution's offer of a plea bargain to one defendant is contingent on a codefendant also agreeing to plead guilty—should be declared impermissible. He contends that the government's package-deal, or "all-or-nothing," plea bargain wrongfully prevented him from pleading guilty. He does not explain how he would have benefited from making his own bargain with the prosecutor, but argues that conditioning a plea bargain on the cooperation of a codefendant violates the fundamental tenet of our criminal justice system that guilt is individual. He cites *United States v. Rodriguez,* 761 F.2d 1339, 1341 (9th Cir.1985). *Rodriguez,* however, stands for the proposition that there must be sufficient evidence to find each codefendant guilty beyond a reasonable doubt and that one may not be convicted on grounds of guilt by association. *Id.* Here, the government's plea bargain offer had nothing to do with establishing guilt by association. Wheat's codefendant, Sanchez-Cretin, was indicted on separate counts and convicted in a separate verdict.[4] Wheat has failed to explain how the package-deal plea bargain offer deprived him of his right to a determination of individual guilt.

■ Second, Wheat argues that package-deal plea bargains impel defendants to coerce codefendants into pleading guilty. Our court and others have recognized this potential problem. But instead of declaring such plea bargains per se impermissible, we enforce a trial judge's duty to ensure that such pleas are voluntary, as required by Fed.R.Crim.P. 11(d). *See United States v. Castello,* 724 F.2d 813, 814–15 (9th Cir.), *cert. denied* 467 U.S. 1254, 104

S.Ct. 3540, 82 L.Ed.2d 844 (1984). We have also demanded that such pleas be voluntary in the related situation where a plea bargain is offered in exchange for a promise of leniency as to a third person. *Id.; Johnson v Wilson,* 371 F.2d 911, 912 (9th Cir.1967). The voluntariness test adequately protects the criminal defendant's due process rights, while, at the same time, preserving the benefits of the plea bargaining process. *See Blackledge v. Allison,* 431 U.S. 63, 71, 97 S.Ct. 1621, 1627–28, 52 L.Ed.2d 136 (1977); *Santobello v. New York,* 404 U.S. 257, 260–62, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971).

■ Wheat cannot complain that there was any coercion or element of involuntariness here, because neither he nor his codefendant accepted the plea bargain offer. Rather, Wheat's argument amounts to a request for a declaratory judgment that all package-deal plea bargains are illegal. Wheat's argument is that he was forced to go to trial because the plea bargain depended upon the occurrence of an event that he could not control. In effect, he says he was punished for something that he did not do and could not control. Wheat cites no authority for this novel theory.

■ Defendants have no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial. *Weatherford v. Bursey,* 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977). Neither must the prosecutor reoffer a previously rejected plea offer. *United States v. Osif,* 789 F.2d 1404, 1405 (9th Cir.1986).

Because there is no right to a plea bargain, and because Wheat does not contend that he or his codefendant were coerced into pleading guilty, his arguments fail.

AFFIRMED.

---

4. The government also points out that had Wheat and Sanchez-Cretin accepted the government's offer, safeguards in the plea bargaining process protect against a finding of guilt by association. *See* Fed.R.Crim.P. 11 (c), (d); *McCarthy v. United States,* 394 U.S. 459, 464–67, 89 S.Ct. 1166, 1169–71, 22 L.Ed.2d 418 (1969) (district judge must directly inquire of defendant pleading guilty as to whether the defendant understands the nature of the charge against him and the consequences of his plea).