**UNITED STATES of America, Plaintiff,**

v.

**Mario RENDA, Franklin A. Winkler, V. Leslie Winkler, Sammy G. Daily, and Frederick Figge, Defendants.**

Nos. 87–20049–01, 87–20049–04, 87–20049–05.

United States District Court, D. Kansas.

Aug. 12, 1987.

Lloyd B. Monroe, Jr., U.S. Dept. of Justice, Kansas City, Mo., for plaintiff.

Ronald G. Russo, New York City, James R. Wyrsch, Kansas City, Mo., Steven M. Dickson, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

In this criminal case, the United States has moved to disqualify the counsel of choice of defendants Daily and Figge, attorney Steven M. Dickson, because of an alleged conflict of interest. The prosecution contends that attorney Dickson represents defendant Figge in a pending civil bankruptcy proceeding that is related to the subject matter of this criminal case and that at a hearing in the bankruptcy proceeding, Figge gave testimony that tended to inculpate defendant Daily and exculpate Figge. The government strenuously argues that this testimony establishes an actual conflict of interest between defendants Daily and Figge such that joint representation of the two by common counsel would violate the defendants' sixth amendment right to effective assistance of counsel. The court conducted a hearing on this matter on August 6, 1987, and is prepared to rule on this matter.

A general summary of the facts of this case will suffice. This prosecution arises out of an alleged scheme by the defendants to place deposits at several banking institutions by fraudulent means and then borrow funds from these same institutions by fraudulent loan statements, coupled with a scheme to disguise the true beneficiaries of the loaned money. The government argues at length that testimony given by defendant Figge at a bankruptcy proceeding in California, *Federal Deposit Insurance Corp. v. Figge*, No. LA85–2416–LH (Bankr.C.D.Cal. June 4, 1987) (transcript of testimony of Frederick A. Figge) directly inculpates defendant Daily in conduct consistent with the government's theory of wire fraud, conspiracy, and false statement charges against Daily. The prosecution also alleges that Figge's testimony tends to insulate himself from the alleged criminal activity. The government has detailed this testimony and its alleged incriminatory effect both in its brief and at the oral hearing, and it has provided the court with a transcript of the entire testimony of defendant Figge. Attorney Dickson represented defendant Figge at the bankruptcy proceeding. Defendants deny that any conflict of interest exists and state that they desire to continue being jointly represented by attorney Dickson.

The issue now before the court arises in practically every criminal case involving joint representation of two or more defendants, as is evidenced by the legion of relevant cases. The starting point is Federal Rule of Criminal Procedure 44(c), which addresses the right to and assignment of counsel:

 (c) Joint Representation. Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have

been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

The notes of the Advisory Committee concerning this 1979 amendment to the Rules establish the following general guidelines:

(1) When a potential conflict arises such as in the case of the same counsel having been retained by co-defendants in a criminal case, the trial judge should conduct a hearing to determine whether a conflict exists to the degree that a defendant may be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the sixth amendment.

(2) Avoiding a conflict-of-interest situation is in the first instance a responsibility of the attorney. However, even the most diligent attorney may be unaware of facts giving rise to a potential conflict, so it is not enough to rely merely on counsel in making a determination concerning a conflict of interest.

(3) Even if the court determines that an actual conflict is not apparent, it is important that the trial judge ascertain whether the effective and fair administration of justice would be adversely affected by continued joint representation.

(4) It is appropriate to leave the particular measures to be taken within the court's discretion, for the measures that will best protect each defendant's right to counsel may well vary from case to case. One possible course of action is for the court to obtain a knowing, intelligent and voluntary waiver of the right to separate representation. Utilization of the following procedure is approved:

As in Rule 11 procedures, the district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections. It is, of course, vital that the waiver be established by "clear, unequivocal, and unambiguous language." ... Mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver, but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego this significant constitutional protection. Recordation of the waiver colloque [sic] between defendant and judge, will also serve the government's interest by assisting in shielding any potential conviction from collateral attack, either on Sixth Amendment grounds or on a Fifth or Fourteenth Amendment "fundamental fairness" basis.

(5) Even after following all of the above-described precautions, giving full disclosure and obtaining consent of the client may not be adequate protection. The trial judge may be compelled to find that the waiver cannot be intelligently made simply because it is impossible to inform the defendant of the foreseeable prejudices that joint representation might entail. The defendant's right to sixth amendment effective representation, even in the face of a waiver of that right, might sometime outweigh his more limited right of counsel of choice.

(6) Finally, even if the trial judge accepts a waiver and permits joint representation initially, the court is not relieved of all responsibility in this regard. The obligation placed upon the court by Rule 44(c) is a continuing one, and thus in a particular case further inquiry may be necessary on a later occasion because of new developments suggesting a potential conflict of interest.

These comments were drafted in connection with the 1979 amendment, and they incorporated contemporary case law. Subsequent decisions shed further light concerning joint representation of criminal defendants and the sixth amendment right to effective assistance of counsel. The court will address some of the recent case law in light of the Advisory Comment to Rule 44(c).

## I. GENERAL CONSIDERATIONS IN JOINT REPRESENTATION CASES

■ The United States Supreme Court has recently reiterated that " '[r]equiring or permitting a single attorney to represent co-defendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel.' " *Burger v. Kemp,* —— U.S. ——, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987) (quoting *Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978)). The Court continued: "We have never held that the possibility of prejudice that 'inheres in almost every instance of multiple representation' justifies the adoption of an inflexible rule that would presume prejudice in all such cases." *Burger,* 107 S.Ct. at 3120. In fact, "the sixth amendment right to counsel of choice 'reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceedings.' " *United States v. Diozzi,* 807 F.2d 10, 16 (1st Cir. 1986) (quoting *United States v. Flanagan,* 465 U.S. 259, 268, 104 S.Ct. 1051, 1056, 79 L.Ed.2d 288 (1984)). *See also Richardson-Merrell, Inc. v. Koller,* 472 U.S. 424, 443, 105 S.Ct. 2757, 2767, 86 L.Ed.2d 340 (1985) (Stevens, J., dissenting) ("[I]n a criminal case an erroneous order disqualifying the lawyer chosen by the defendant should result in a virtually automatic reversal...."). Couched against this right to counsel of choice is the right to a criminal defense conducted by an attorney who is free from conflicts of interest. *See United States v. Wheat,* 813 F.2d 1399, 1401 (9th Cir.1987). This obviously puts the trial court in the position of balancing two concerns while knowing that denial of either of these may result in an appeal assigning the ruling as reversible error. *Id.* Yet disqualification should be a measure of last resort, and the government bears a heavy burden of establishing that disqualification is justified. *Diozzi,* 807 F.2d at 12.

## II. DETERMINATION OF CONFLICT

■ In the event that the trial court is able to determine that "no conflict is likely to arise," Rule 44(c) dictates that the court need not take any other precautions or measures, and the defendants may then proceed to trial jointly represented by counsel. Of course, a court can only rarely, if ever, find as a matter of law that *no* conflict is possible in the representation of two criminal defendants. To the extent that the trial judge is not fully apprised of the details of the case and the facts and circumstances to be drawn therefrom, it is unrealistic to believe that an accurate prediction concerning a conflict of interest can be made with any degree of certainty. There is always a possibility of prejudice that "inheres in almost every instance of multiple representation." *Burger,* 107 S.Ct. at 3120. The court may (and should), however, determine whether the conflict is too remote to warrant separate counsel. *Wheat,* 813 F.2d at 1403 (citing *Holloway,* 435 U.S. at 484, 98 S.Ct. at 1178). Only in unique circumstances can a court disqualify counsel over the defendants' objection when the sole basis for disqualification is a *potential* for a conflict of interest of which both defendants are aware. *United States v. Cirrincione,* 780 F.2d 620, 628 (7th Cir. 1985).

■ In regard to determining whether a conflict exists, the Supreme Court recently

stated: "[W]e generally presume that the lawyer [for defendants] is fully conscious of the overarching duty of complete loyalty to his or her client. Trial courts appropriately and 'necessarily rely in large measure upon the good faith and good judgment of defense counsel.'" *Burger*, 107 S.Ct. at 3120 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 347, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980)). "An attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." *Holloway*, 435 U.S. at 485, 98 S.Ct. at 1179. *See also Cuyler*, 446 U.S. at 346, 100 S.Ct. at 1717 (defense counsel's ethical duty to avoid conflicting representations and to advise the court when conflict arises during course of trial). Of course, the trial court has the discretion (and the duty) to make further inquiry even if counsel assures the court that no conflict exists. *See Wheat*, 813 F.2d at 1403. " 'Because the conflicts are often subtle it is not enough to rely upon counsel, who may not be totally disinterested.'" *Id.* (quoting *United States v. Lawriw*, 568 F.2d 98, 104 (8th Cir.1977), *cert. denied*, 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978)).

The court finds that in the absence of a determination that an actual conflict exists, joint representation can be permitted provided that certain other precautions are taken, as discussed below. *See Burger*, 107 S.Ct. at 3120 (discussing fact that as to post-trial remedy, court will presume prejudice to defendants only if an actual conflict of interest adversely affected lawyer's performance). *But see Wheat*, 813 F.2d at 1404 ("In the Sixth Circuit ... [e]ven where there is an *actual* conflict, a trial court should override a defendant's knowing waiver only in 'compelling circumstances.'" (emphasis added) (quoting *United States v. Reese*, 699 F.2d 803, 805 (6th Cir.1983)).

## III. WAIVER

██ As was previously mentioned, the court may permit criminal defendants to waive their sixth amendment right of effective assistance of counsel and individual representation when no actual conflict is readily ascertainable. The Tenth Circuit has approved the following procedure employed by one trial court in complying with Rule 44(c) and ensuring that the defendants knowingly and intelligently waive their right to separate counsel:

(1) The United States Magistrate personally questions both defendants.

(2) The defendants sign a statement "that they are familiar with [Rule 44(c)], familiar with the facts in the case, and that they are of the opinion that there is no conflict of interest in the joint representation, and that's the way they want it."

(3) The trial court again advises both defendants of their right to separate counsel at a motions hearing.

(4) The trial court has both defendants sign and file with the court a Waiver of Right to Have Separate Counsel. In this written Waiver, the defendants should declare

(a) that they have been provided with a copy of Rule 44;

(b) that they have been advised by the magistrate (or district judge) in open court of the provisions of Rule 44;

(c) that they know of possible conflicts of interest that might arise during trial;

(d) that one defendant could testify against the other defendant and such testimony might be harmful; and

(e) that each has been fully advised of these potential conflicts by both the court and their attorney, and they still choose to be represented by a single attorney.

*United States v. Dressel*, 742 F.2d 1256, 1258–59 (10th Cir.1984).

██ The waiver of the right to counsel must not only be voluntary, but must also be knowing and intelligent, with sufficient awareness of the relevant circumstances and likely consequences. *United States v. Akinseye*, 802 F.2d 740, 745 (4th Cir.1986) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d

747 (1970), *cert. denied,* —— U.S. ——, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987)). If the trial judge specifically admonishes the defendants of the potential for future conflict and the defendants knowingly, intelligently and voluntarily waive the right of separate representation, the law requires nothing more, *United States v. Williams,* 809 F.2d 1072, 1085 (5th Cir.1987), and the waiver will insulate a conviction from later attack. *United States v. Flanagan,* 679 F.2d 1072, 1076 (3d Cir.1982), *rev'd on other grounds,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). The standard for measuring an effective waiver of a constitutional right such as effective assistance of counsel is as follows:

> A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

*United States v. Cirrincione,* 780 F.2d 620, 624 (7th Cir.1985) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

Beyond the sixth amendment right to counsel of choice, the court believes that other factors can weigh in favor of permitting co-defendants to waive their right to separate representation. First, "in many cases a 'common defense ... gives strength against a common attack.'" *Burger,* 107 S.Ct. at 3120 (quoting *Glasser v. United States,* 315 U.S. 60, 92, 62 S.Ct. 457, 475, 86 L.Ed. 680 (1942) (Frankfurter, J., dissenting)). The Fourth Circuit expanded somewhat on Justice Frankfurter's view as expressed in *Glasser:* "[I]n some cases multiple defendants can appropriately be represented by one attorney; indeed, in some cases, certain advantages might accrue from joint representation. In Mr. Justice Frankfurter's view: 'Joint representation is a means of insuring against reciprocal recrimination.'" *Hodge v. Reeves,* 803 F.2d 713 (4th Cir.1986) (table, text in Westlaw) (quoting *Glasser,* 315 U.S. at 92, 62 S.Ct. at 475). The Tenth Circuit has also recognized that when two defendants' interests are closely aligned, their united front strategy might be the best strategy available. *United States v. Burney,* 756 F.2d 787, 793 (10th Cir.1985).

Second, the court should be extremely careful not to let the government's attempted disqualification of defense counsel "transform the sixth amendment right to conflict-free counsel into a two-edge sword with which the government would be able to sever defendants from those most able to protect their legitimate legal interests." *In re Paradyne Corp.,* 803 F.2d 604, 611 (11th Cir.1986). In an extremely complicated case it may cause a fundamental injustice to remove the *one* attorney whose intimate knowledge of the defense and whose close relationship with the defendants make him practically the only available attorney capable of presenting effective assistance of counsel.

The court is ever mindful that even if all of the previously defined criteria support permitting waiver and joint representation, there are still other considerations that the trial court must examine. The Eleventh Circuit effectively summarized one of these:

> The right to counsel of one's choice is not absolute. The right does not override the broader societal interests in the effective administration of justice ... or in the maintenance of "public confidence in the integrity of our legal system." ... But the right yields only to broader societal interests: it cannot be denied by a court unilaterally as a means to protect other sixth amendment rights of a defendant. The Constitution grants defendants the prerogative of choosing, knowingly and voluntarily, the right to retain chosen counsel over the right to effective representation free from conflict of interest.

*In re Paradyne Corp.,* 803 F.2d at 611 n. 16 (citations omitted). *See also Diozzi,* 807 F.2d at 12 (district court has some discretion to limit the exercise of the right to counsel of choice when insistence upon it would interfere with the orderly adminis-

tration of justice). The court may have to reach out and protect the defendants from themselves when, under all the circumstances, the court finds that the balance of the interests involved require disqualification. *See Dressel,* 742 F.2d at 1258: "Notwithstanding the trial court's compliance with all of the suggested procedures to ensure that any waiver is fully informed and voluntary, under some circumstances 'even full disclosure and consent ... may not be an adequate protection.'" (Quoting Fed.R.Crim.P. 44(c) advisory committee's note).

Additionally, obtaining a waiver from defendants and entering an initial order permitting joint representation may not end the court's supervision over the matter. The courts have followed the advisory committee's dictate that the obligation placed upon the court by Rule 44(c) is a continuing one, and in a particular case further inquiry may be necessary at a later occasion because of new developments suggesting a potential conflict of interest. *Akinseye,* 802 F.2d at 745 n. 3. *But see United States v. Smith,* 778 F.2d 925, 930 (2d Cir.1985) ("[T]here is no requirement that parties who receive adequate pretrial warnings on the dangers of joint representation be warned again after the trial begins.") The *Akinseye* court suggested that the better practice is for the trial court to conduct further Rule 44(c) inquiry when the defendants take the stand and, if necessary, obtain a further waiver, a recommendation based mainly on the belief that it is impossible at the pre-trial stage to describe in full detail the conflicts that may arise during the trial. *Id.* at 745–56. Several courts have suggested that the trial judge can never fully explain to a defendant all of the permutations and combinations of circumstances of the evidence to be presented. *United States v. Agosto,* 675 F.2d 965, 976 (8th Cir.), *cert. denied,* 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982); *United States v. Montevecchio,* 645 F.Supp. 497, 499 (W.D.Pa.1986).

## IV. APPLICATION TO PRESENT FACTS

The court finds that after a careful review of the authority cited above and the facts of this case in their present light, disqualification of defense counsel is not warranted. The court believes that the following particulars support this finding.

### (A) *Procedures Employed to Date*

When the issue of a possible conflict of interest first arose during the Omnibus Hearing in this case, Magistrate Gerald Rushfelt conducted oral examination of each of the defendants and obtained the following representations from them after informing them of the possibility of danger arising from joint representation: (1) the two defendants discussed with attorney Dickson the implications and risks arising from his representing both of them; (2) the two defendants discussed this possibility among themselves; (3) neither of them were under the influence of any drugs or alcohol and both fully understood the nature of the court's questioning; (4) they understood that joint representation can affect the attorney's independent investigation in support of each of the defendant's cases; (5) they understood that joint representation may inhibit or prevent independent plea negotiations, particularly in terms of negotiating immunity or sentencing recommendations in exchange for testimony against the other defendant; (6) they understood that the attorney-client privilege might prevent the attorney from communicating information gathered from one defendant to the other; (7) they understood that joint representation might affect the attorney's decision as to whether a jury trial should be waived by one or both of them; (8) they understood that the attorney's use of peremptory challenges to the jury might be affected; (9) they understood that joint representation might prevent the attorney from challenging the admission of evidence which may be favorable to one of them but prejudicial to the other; (10) they understood that the attorney might be inhibited from introducing evidence that might be favorable to one but not the other; (11) they understood that the decision of whether either, both or neither of them should testify might be adversely affected;

(12) they understood that the attorney's ability to fully cross-examine the government's witnesses on the same tactical or strategical route might be inhibited; (13) they understood that the attorney would be prohibited from placing the blame on either one of them during final argument; (14) they understood that if convicted, the ability of the attorney to engage in post-trial negotiations with the government concerning full disclosure by one defendant against the other would be prohibited; (15) they understood that during the sentencing procedure joint representation would prevent the attorney from arguing the relative culpability of the two. Furthermore, the Magistrate strongly recommended that the defendants not be jointly represented. The Magistrate informed the defendants that a court-appointed counsel was available. Finally, the Magistrate elicited a narrative response from attorney Dickson on how he intended to address and resolve these potential problems with the defendants. At the end of the examination, the Magistrate was satisfied that each of the defendants fully understood the implications and risks and voluntarily opted to waive any objection concerning a conflict of interest.

The government subsequently filed a formal motion to disqualify attorney Dickson based on its perception of a conflict of interest as demonstrated by defendant Figge's testimony in the California bankruptcy matter. At the oral hearing on this motion, counsel for the government stated the prosecution's objection to joint representation and quoted at length from the transcript of defendant Figge's prior testimony those passages that the prosecution claims establish an actual conflict of interest. The quoted material dealt with defendants Figge's and Daily's joint participation in a business enterprise and included statements that, when viewed without context, might lead one to perceive the possible implication of Daily in some uneth-

ical (though not necessarily illegal) business practices.

Defendant's attorney then proceeded to inform the court that neither he nor his clients recognized the joint representation as implicating even a recognizable possibility of a conflict of interest. While conceding that the potential is always there in a joint representation case (as the case law establishes), neither counsel nor the defendants presently believed that a conflict was foreseeable. Furthermore, attorney Dickson essentially repeated the following statement made earlier to the Magistrate:

> [R]epresentation of both of these gentlemen is not new to this criminal case. I represent them both in companion civil cases involving the same facts. The facts are voluminous, the amount of evidence enormous, the Court is certainly aware of the amount of work that has been put in by myself on the civil case and the amount of time that's been involved in learning these facts.

Counsel stated that the testimony of Figge in the bankruptcy matter did not incriminate Daily and that the only conduct mentioned by Figge did not involve a violation of the law.

The court then questioned defendants Daily and Figge in open court. It first obtained the educational levels attained by each. They both had masters degrees in engineering and had achieved outstanding academic and professional records. They both had been in court previously and had experience with the courts and the judicial processes.* The court went through essentially the same in-depth examination of the range of possible conflicts of interest that the magistrate addressed, after which the defendants repeated their strong desire to have attorney Dickson jointly represent them.

### (B) *Nature of the Litigation*

This criminal case involves over 30 counts against five defendants. It con-

---

\* The court is well aware that even the most complete educational background and experience does not necessarily assume an intelligent waiver. One court has noted that even a defendant who was an experienced trial lawyer and had served four years as an Assistant Unit-

ed States Attorney prosecuting criminal cases may fail to validly waive his rights. *See United States v. Montevecchio,* 645 F.Supp. 497, 499 (W.D.Pa.1986) (discussing *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942)).

cerns intricate and involved business transactions over an extended period of time. The trial itself is scheduled to require over 40 days of trial time and has already been declared by this court (upon motion of the defendants and acquiescence of the government) as a complex case under 18 U.S.C. § 3161(h)(8)(B)(ii). There is no doubt in this court's mind that due to attorney Dickson's previous and continuing representation of both of these defendants through civil and criminal proceedings, he is the only attorney reasonably capable of giving each and both of these defendants truly effective assistance at trial. The court has never been presented with a better case for joint representation. It is evident that the defendants are pursuing a common defense against the prosecution and that coordination of such a defense can only be handled through common representation.

### (C) *Foreseeability of a Conflict of Interest*

Recognizing the scope of the case that has been presented to the court to date and regarding the evidence submitted by the prosecution in bringing the present motion, the court does not believe that anything more than a speculative conflict of interest now exists. The bankruptcy court testimony of defendant Figge certainly does not implicate defendant Daily in the manner argued by the government. As far as the court can now determine, this testimony is nothing more than consistent with the defendants' common view of the facts of the case. Certainly, defendant Daily listened to each allegedly inculpatory statement made by defendant Figge and proceeded to inform the court that no conflict exists. The court does not have any basis to believe otherwise. The court intends to closely monitor this case, however, and at the first sign of a conflict, be it at a hearing or at trial or otherwise, the court will forthwith conduct an inquiry into the matter and take appropriate protective measures consistent with the law summarized in this Memorandum and Order.

### (D) *Knowing, Voluntary and Intelligent Waiver*

The court finds that these defendants, both of whom have masters degrees and both of whom appeared before this court as perhaps the most intelligent and informed criminal defendants with whom the court has ever become acquainted, are familiar with the legal processes involved in this criminal action, are aware of the gamut of potential conflicts that might arise through joint representation, are completely informed as to what the government views as testimony establishing a conflict of interest, and have voluntarily, knowingly and intelligently waived their right to independent counsel. Simply put, these men have been harped upon about the enormous danger of joint representation and despite all of the rhetoric, they *both* want attorney Dickson to represent them *both*. The court has perceived no coercion in this decision and despite a review of all the circumstances, the court cannot find any particular facts in this case or any apparent ignorance of the consequences of joint representation to suggest that the decision as to representation should be taken from the defendants' hands. *Cf. United States v. Montevecchio*, 645 F.Supp. 497, 499–500 (W.D.Pa. 1986) (discussing whether any waiver of sixth amendment rights can ever be invulnerable to challenge).

### (E) *Lack of any Overriding Interest*

The court is well aware that despite a constitutionally valid waiver, disqualification may sometimes be necessary to afford a criminal defendant adequate protection or to implement other interests. As noted above, however, the court has found no basis upon which to override defendants' waiver. The nature of the case and the knowledge of the defendants concerning the possible dangers lead this court to believe that the defendants have a unified defense strategy suitable for joint representation. Inasmuch as the court is not an omniscient entity capable of an infallible forecast concerning how this case will proceed, at this stage of the litigation the court finds without hesitation that joint

representation is in the best interests of the defendants.

Furthermore, the court does not believe that society's interests in the effective administration of justice or in the maintenance of public confidence in the integrity of our legal system necessitate a different conclusion. Our judicial system permits a criminal defendant to privately retain competent counsel if he so desires, and only in the gravest of circumstances should this right be taken away. The public and the Constitution demand a fair trial, and the court believes that the holding in this Memorandum and Order is consistent with this demand.

### (F) *Additional Measures to Be Taken*

The court does not intend to end the inquiry here. First, the court will direct that the defendants execute a written and sworn waiver of their right to separate counsel consistent with the written waiver outlined in *United States v. Dressel,* 742 F.2d 1256 (10th Cir.1984). Second, at the motion hearing scheduled for this litigation or at some other pre-trial proceeding, the court will attempt to elicit a narrative response from the defendants that they have been advised of their right to effective representation, that they understand the possible conflict of interest and the potential perils associated therewith, that they have discussed this with their attorney or, if they desire, with outside counsel, and that they voluntarily waive their sixth amendment protection, consistent with the advisory committee's notes on Rule 44(c). *See also United States v. Iorizzo,* 786 F.2d 52, 59 (2d Cir.1986) (criticizing the use of questions calling only for a "yes" or "no" answer). Third, the court will view the progress in this case with an eye toward the defendants' sixth amendment rights, and at any time during the litigation, be it before or after the trial begins, if an actual conflict comes to the attention of the court, the court will take appropriate measures to insure the integrity of the trial and the defendants' right to effective assistance of counsel.

## VI.  CONCLUSION

The government has sought to disqualify the common counsel of defendants Daily and Figge based on its perception of a conflict of interest. In doing so it carries a heavy burden of demonstrating that an infringement of defendants' sixth amendment right to counsel of choice is outweighed by the defendants' other sixth amendment right—effective assistance of counsel—or by some societal interest. Based upon all the facts and circumstances of this case, the court finds that joint representation of the defendants is constitutionally required and further, that defendants have validly waived their sixth amendment right and any objections to joint representation which they might otherwise have raised.

IT IS BY THE COURT THEREFORE ORDERED that the United States' motion to disqualify counsel be denied. IT IS FURTHER ORDERED that the defendants prepare a written waiver consistent with this Memorandum and Order to be signed and executed in open court at some later date to be set by the court.