NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12118


COMMONWEALTH  vs.  ROGER D. FRANCIS.



Plymouth.     April 3, 2017. - August 11, 2017.

Present:  Gants, C.J., Lenk, Hines, Lowy, Budd, & Cypher, JJ.


Practice, Criminal, Plea.



Indictment found and returned in the Superior Court on May
11, 1967.

Following review by this court, 355 Mass. 108 (1969), a
motion for a new trial, see 411 Mass. 579 (1992), and the
withdrawal of a plea of guilty and a second trial, see 450 Mass.
132 (2007), a motion for a new trial, filed on August 5, 2013,
was heard by Linda E. Giles, J.

A request for leave to appeal was allowed by Botsford, J.,
in the Supreme Judicial Court for the county of Suffolk.


Mary E. Lee, Assistant District Attorney, for the
Commonwealth.
Leslie W. O'Brien for the defendant.


LOWY, J.  The Commonwealth claims that an order granting

the specific performance of a plea agreement constituted error.

We agree.

Background.  In 1967, the defendant, Roger Francis, was convicted of murder in the first degree for killing his fifteen year old girl friend.  See Commonwealth v. Francis, 355 Mass. 108, 108-109 (1969).  In 1989, a Superior Court judge allowed the defendant's motion for a new trial because of errors in the reasonable doubt jury instruction given in his 1967 trial.  Thereafter, this court, considering the Commonwealth's appeal on report of a single justice pursuant to the gatekeeper provisions of G. L. c. 278, § 33E, affirmed.  Commonwealth v. Francis, 411 Mass. 579, 580 (1992).

In May, 1994, the defendant reached a plea agreement with the Commonwealth:  The defendant would plead guilty to murder in the second degree in exchange for the opportunity to immediately seek parole, which the Commonwealth would not oppose.[1]  If the parole board declined to grant the defendant parole, the agreement allowed the defendant to withdraw his guilty plea and proceed to trial on the murder in the first degree charge.  After the plea agreement had been reached, the defendant pleaded guilty on May 25, 1994, before a Superior Court judge (plea judge).  At the plea hearing, the defendant's counsel made representations that there was an understanding between the

---

[1] At the time of the defendant's 1994 plea, he had already served more than fifteen years in prison.  Those convicted of murder in the second degree in 1967 were eligible for parole after fifteen years.  St. 1965, c. 766, § 1.

parole board and the defendant that the defendant would not be required to be in custody to be considered for parole.[2]  To effectuate the understanding as it was represented,[3] the plea judge -- over the Commonwealth's objection -- stayed the execution of the sentence on the charge of murder in the second degree while the defendant's parole application was being considered.  The parole hearing was scheduled for August, 1994.

Before the scheduled parole hearing, the parole board informed the parties and the plea judge of its position that pursuant to the terms of G. L. c. 127, § 133A,[4] the defendant had to be in custody in order for the parole board to have jurisdiction over him.  Because the defendant disagreed with returning to custody, the August parole hearing was canceled.

In September, 1994, in response to the parole board's position, the plea judge issued a revised order that would terminate the stay of the defendant's sentence once the parole

---

[2] Nothing occurred during the plea colloquy to suggest that the Commonwealth had agreed as a condition of the plea that the defendant need not be in custody during the parole hearing.

[3] It is questionable at best whether there was ever an understanding between the parole board and the defendant that the defendant need not be in custody during his parole hearing.

[4] General Laws c. 127, § 133A, provides:  "Every prisoner who is serving a sentence for life in a correctional institution of the commonwealth . . . shall be eligible for parole at the expiration of the minimum term fixed by the court . . ." (emphasis added).

board commenced its hearing.  The order was designed to accommodate the defendant's request to avoid custody.

The parole hearing was rescheduled for March, 1999.[5]  This hearing was canceled in part due to the defendant's resistance to returning to custody.  The parole hearing was rescheduled for March, 2000.  Because the defendant would have to return to custody to have his parole hearing, he filed a motion to continue the stay of his sentence, or, alternatively, to withdraw his plea.

At the hearing on this motion, in March, 2000, a different judge attempted to craft a solution that would allow the defendant to remain out of custody while conforming with the parole board's position that the defendant must be in custody for it to conduct a hearing.  The judge proposed that the stay be continued until the moment the parole hearing commenced (in keeping with the 1994 plea judge's order), and that the stay be automatically reimposed following the parole hearing if the defendant were denied parole, so that he could withdraw his plea.  The Commonwealth objected to this proposal.  The judge then granted the defendant's alternative request for relief,

---

[5] This five-year gap was the result of the defendant requesting that his attorney not pursue a parole hearing and, apparently, the Commonwealth losing track of the defendant's case.  In 1998, the prosecutor's office was informed by the Superior Court clerk's office in Brockton that the court was still holding the defendant's bail money, and the case began to proceed.

allowing the defendant to withdraw his guilty plea to murder in the second degree.

The defendant was retried on the original indictment for murder in the first degree in 2003 before a third Superior Court judge and jury. His conviction of that crime was upheld by this court.[6] See Commonwealth v. Francis, 450 Mass. 132, 133 (2007). In 2013, the defendant filed a motion for a new trial alleging ineffective assistance of counsel and that his 1967 sentence was cruel or unusual. Although the judge -- who was the judge at the defendant's 2003 trial -- found the defendant's arguments unavailing, "[i]n light of the extenuating facts of this case," she granted the motion based on "principles of fundamental fairness and due process," even though she found that the Commonwealth had not reneged on the plea offer. The judge ordered specific performance of the 1994 plea agreement, and allowed the defendant to plead guilty to murder in the second degree. The judge reasoned that this was the correct result because "another party to the negotiation, the court, adopted an interpretation of the [s]tatute -- that the Parole Board could entertain the defendant's request for parole and conduct a hearing at the Board's office without his surrendering into [Department of Correction] custody -- on which the defendant

---

[6] Prior to this trial, the defendant filed a motion to enforce the plea agreement, which the trial judge denied.

relied to his detriment."[7]  The Commonwealth appealed to a single
justice of this court pursuant to G. L. c. 278, § 33E, who
allowed the petition.

Discussion.  The decision whether the Commonwealth enters
into a plea agreement with the defendant is the prosecutor's
alone.  See Commonwealth v. Gordon, 410 Mass. 498, 500 (1991).
See also Commonwealth v. Hart, 149 Mass. 7, 8 (1889) ("Only an
attorney authorized by the Commonwealth to represent it has
authority to declare that he will not further prosecute a case
in behalf of the Commonwealth.  A court is not a prosecuting
officer . . .").  As a general matter, when a judge accepts a
defendant's plea of guilty to murder in the second degree to an
indictment for murder in the first degree over the objection of
the Commonwealth, she usurps "the decision-making authority
constitutionally allocated to the executive branch."  Gordon,
supra at 501, and cases cited.  A judge may, however, enforce a
plea agreement over the Commonwealth's objection if she finds
that the defendant has reasonably relied on a prosecutor's
promise to his or her detriment.  Commonwealth v. Smith, 384
Mass. 519, 521 (1981).  Whether an enforceable promise exists is
primarily a question of contract law, id. at 521-522, but, in
addition, "[w]e would go beyond contract principles to order

_____

[7] As we explain, infra, the court is not a party to plea
negotiations, and, more importantly, the defendant never relied
to his detriment on any promise related to custody.

specific performance of a prosecutor's promise even where no contract may have existed, if, on principles of fundamental fairness encompassed within notions of due process of law, the promise should be enforced."  Id. at 522.

The issue before us is whether the judge in 2013 abused her discretion in deciding to enforce the 1994 plea agreement between the Commonwealth and the defendant.  More particularly, the issue is whether the prosecutor made an enforceable promise to the defendant that he need not be in custody for the parole hearing.

Applying contract principles, the record does not indicate that the Commonwealth made any enforceable promise to the defendant that he would not have to go into custody before his parole hearing could take place.  Indeed, the record is to the contrary.  Thus, we apply a two-prong test to determine whether fundamental fairness requires us to find an enforceable promise in the plea agreement:  first, we ask "whether the defendant had reasonable grounds for assuming his interpretation of the bargain," Smith, 384 Mass. at 523, quoting Blaikie v. District Attorney for the Suffolk Dist., 375 Mass. 613, 616 n.2 (1978); and second, we ask "whether [the defendant] relied on that interpretation to his detriment."  Smith, 384 Mass. at 523.

Here, the defendant's argument fails both prongs of the test.  There were no reasonable grounds for the defendant to

believe that the prosecutor acquiesced to his not being in custody during the parole hearing process. The prosecutor consistently objected to the stay of the defendant's sentence throughout the plea process and continued to object to it over the course of subsequent hearings. See Commonwealth v. Cruz, 62 Mass. App. Ct. 610, 612 (2010). The prosecutor's objection demonstrates that it had made no enforceable promise that the defendant would avoid custody at the time he would be considered for parole. This view is consistent with the judge's finding that the Commonwealth never reneged on its offer.

Even if there were reasonable grounds for the defendant to believe that the Commonwealth had promised him that he would not have to be in custody for the parole board to conduct its hearing, the defendant's argument also fails the second prong of the test, because there is no evidence that he relied on the alleged promise to his detriment. The parole board did not hold a hearing between 1994 and 2000 while the defendant was at liberty. The defendant, therefore, took advantage of his interpretation of the plea agreement (adopted by the court) that he be allowed to withdraw his plea if he were required to go into custody as a condition of his parole hearing. Contrast Santobello v. New York, 404 U.S. 257, 261-262 (1971) (detrimental reliance where defendant pleaded guilty based on promise of prosecutor to make no sentencing recommendation, but

prosecutor subsequently broke promise and recommended maximum sentence); Commonwealth v. Benton, 356 Mass. 447, 448-449 (1969) (detrimental reliance where defendants pleaded guilty based on promise of prosecutor to enter nolle prosequi to certain charges, but prosecutor subsequently indicted defendants on charges that had been so disposed). The defendant never relied to his detriment on any alleged promise from the Commonwealth. His plea agreement specifically allowed him to withdraw the plea and have the trial he requested. The plea bargaining process did not put the defendant in a worse position than he would have been if the prosecutor had never agreed to the bargain in the first place. Smith, 384 Mass. at 522. The defendant withdrew his plea and he was then left with the adequate remedy of proceeding to trial. Id.[8]

A judge may not use the vantage point of hindsight to second guess the decisions of a defendant in rejecting a plea agreement. See Commonwealth v. Mahar, 442 Mass. 11, 17 (2004). That is what happened here. There was no enforceable promise made by the Commonwealth that the defendant did not have to ever

---

[8] This situation is different from that presented by Commonwealth v. Mahar, 442 Mass. 11 (2004). In that case, we held that a fair trial does not ameliorate the harm of ineffective assistance of counsel during the plea consideration process. Id. at 14-15. Here, where the judge below rejected the defendant's ineffective assistance claim, nothing impeded the defendant during plea negotiations besides his refusal to go back into custody so that the board could conduct a hearing.

go into custody. Thus, there were no grounds for the judge to allow the defendant to plead guilty to murder in the second degree.[9] We conclude that the judge abused her discretion in granting the defendant's motion for new trial. See Commonwealth v. Yardley Y., 464 Mass. 223, 227 (2013) (grant or denial of motion to challenge or enforce plea reviewed for abuse of discretion).

Conclusion. The grant of the defendant's motion for a new trial is reversed.

So ordered.

---

[9] We note that following the 2003 trial, the judge had the authority to reduce the verdict of murder in the first degree to murder in the second degree under Mass. R. Crim. P. 25 (b) (2), 379 Mass. 896 (1979). There is no argument before us that the judge's action in 2013 was undertaken pursuant to this rule.