NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13253

COMMONWEALTH  vs.  FRANK DiBENEDETTO.


Suffolk.     November 4, 2022. – February 28, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker,
                & Wendlandt, JJ.


Due Process of Law, Plea.  Constitutional Law, Plea.  Practice,
    Criminal, Capital case, Plea, Trial of defendants together,
    Postconviction relief, District attorney.  District
    Attorney.  Words, "New and substantial question."



    Indictments found and returned in the Superior Court
Department on May 21, 1986.

    Following review by this court, 414 Mass. 37 (1992), 427
Mass. 414 (1998), 458 Mass. 657 (2011), and 475 Mass. 429
(2016), a motion for postconviction relief, filed on May 7,
2021, was heard by James F. Lang, J.

    A request for leave to appeal was allowed by Gaziano, J.,
in the Supreme Judicial Court for the county of Suffolk.


    Ruth Greenberg for the defendant.
    Cailin M. Campbell, Assistant District Attorney, for the
Commonwealth.
    The following submitted briefs for amici curiae:
    Travis H. Lynch, Assistant District Attorney, for District
Attorney for the Hampden District.
    Robert F. Hennessy for Committee for Public Counsel
Services.

GAZIANO, J.  In 1994, the defendant, who had been indicted, along with two codefendants, on two counts of murder in the first degree, and was to be tried jointly with one of his codefendants, was offered a "package deal" plea bargain.  Under the terms of this offer, the defendant would have been able to plead guilty to manslaughter, but only if his codefendant also agreed to the same plea.  The defendant agreed to the terms of the agreement, but his codefendant, a juvenile, refused.  Both the defendant and his codefendant subsequently were tried and convicted of all charges, and sentenced to consecutive terms of life in prison without the possibility of parole.  In May 2021, the defendant filed a motion in the Superior Court, pursuant to Mass. R. Crim. P. 30, as appearing in 435 Mass. 1501 (2001), to vacate his convictions of murder in the first degree and to accept his pleas to manslaughter, as the Commonwealth originally had offered.  The defendant's motion to enforce the terms of the proffered agreement was based on the argument that the condition attached to the offer -- that both he and his codefendant plead guilty -- violated his due process right to decide whether to accept the plea or to go to trial.  A Superior Court judge, who was not the trial judge, denied the motion.  The defendant filed a gatekeeper petition in the county court, pursuant to G. L. c. 278, § 33E, seeking leave to appeal from the denial of the

motion, and a single justice allowed the appeal to proceed in this court.

We conclude that the plea offer did not violate the defendant's rights to due process. A package deal plea is consonant with the prosecutor's broad discretion to decide whether, and under what terms, to enter into a plea agreement. A prosecutor may insist that, in order for a defendant to receive a more lenient sentence than what might be received at trial, all codefendants must agree to waive their rights to trial.[1]

1. Background. a. Prior proceedings. This case has a lengthy history in this court. In April 1988, the defendant and one of his codefendants, Louis R. Costa, were found guilty of two counts of murder in the first degree after a joint trial. Another codefendant, Paul Tanso, also was convicted of two counts of murder in the first degree at a separate trial. In 1992, this court reversed the convictions of all three defendants because recorded testimony of a witness who was unavailable at the trials had been admitted improperly. See Commonwealth v. DiBenedetto, 414 Mass. 37, 50 (1992);

---

[1] We acknowledge the amicus briefs submitted by the district attorney for the Hampden district and the Committee for Public Counsel Services.

Commonwealth v. Tanso, 411 Mass. 640, 656, cert. denied, 505 U.S. 1221 (1992).

The defendant and Costa were retried jointly, and on February 3, 1994, they each were convicted of two counts of murder in the first degree on a theory of deliberate premeditation. The defendant also was found guilty on a theory of extreme atrocity or cruelty. The defendant and Costa each were sentenced to consecutive sentences of life without the possibility of parole. This court affirmed the convictions and denied the defendants' requests for relief under G. L. c. 278, § 33E. See Commonwealth v. DiBenedetto, 427 Mass. 414, 416 (1998). In March 1994, Tanso was retried separately and was acquitted.

In 2005, the defendant and Costa each filed a motion for a new trial based on newly discovered evidence concerning deoxyribonucleic acid testing of bloodstains on the defendant's sneakers. In 2009, the Superior Court judge who had presided over the defendant's second trial denied these motions. The defendant and Costa each filed gatekeeper petitions in the county court pursuant to G. L. c. 278, § 33E, seeking leave to appeal from the denial of their motions for a new trial; two different single justices allowed these gatekeeper petitions to proceed. On a consolidated appeal from the denials, this court remanded the matter to the Superior Court for further findings

concerning the newly uncovered evidence and its exculpatory value.  See Commonwealth v. DiBenedetto, 458 Mass. 657, 670-673 (2011).  After a nonevidentiary hearing, a Superior Court judge again denied the motions.  The defendant then filed a petition in the county court to reinstate his appeal in the full court.  A single justice held that the defendant was "required to seek leave to appeal from the renewed denial of his new trial motion through a second gatekeeper petition under [G. L. c. 278,] § 33E."  Commonwealth v. DiBenedetto, 475 Mass. 429, 431 (2016).  The single justice "treated the defendant's petition to reinstate his appeal as a second gatekeeper petition" and "denied the petition."  Id.  In September 2015, "the defendant filed a motion in the full court to reinstate his appeal."  Id. at 431-432.  We held that "reinstatement of the appeal [was] appropriate, even though the court did not expressly retain jurisdiction."  Id. at 432.  We further concluded that the "motion judge did not abuse his discretion in denying the defendant's motion [for a new trial]."  Id.

On October 9, 2015, Costa, who was sixteen at the time of the shooting, was resentenced to serve two concurrent life sentences with the possibility of parole.  The resentencing followed this court's decision in Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655, 671 (2013), S.C., 471 Mass. 12 (2015), in which we concluded that the

Massachusetts Declaration of Rights does not permit a sentence of life in prison without the possibility of parole for individuals who commit murder in the first degree while under the age of eighteen.  On July 26, 2018, Costa was released on parole.

In May 2021, the defendant, who was nineteen years old at the time of the shooting, filed a motion in the Superior Court, pursuant to Mass. R. Crim. P. 30, to vacate his convictions of murder in the first degree and to enforce a plea arrangement under which he would plead guilty to two counts of manslaughter. In his motion, the defendant asserted that, during his retrial in 1994, the prosecutor offered him and Costa a plea agreement in which they each would plead guilty to manslaughter, but only on the condition that both of them accepted the arrangement. The defendant agreed to accept the proffered agreement, but Costa rejected it.  As grounds for his motion, the defendant argued that "making [his] plea offer contingent on the willingness of his codefendant to accept it . . . violated his due process right, protected by the Fourteenth Amendment and art. 12, to make his own decision whether to accept the plea or go to trial."  The defendant's motion was denied.  The defendant filed another gatekeeper petition pursuant to G. L. c. 278, § 33E, in the county court, seeking leave to appeal from the denial of the motion.  The single justice allowed the appeal to

proceed "on the ground that it presents a new and substantial question which ought to be determined by the full court."

b. Plea offer. The defendant submitted six affidavits to support his contention that the Commonwealth offered him and Costa a plea arrangement during the course of the 1994 retrial. One affidavit was by the defendant himself; two were from the attorney who represented him on retrial; one was by the attorney's then associate, who assisted him on the case; one was from the defendant's sister, who was in the court room during the retrial; and one was by Costa.

The defendant avers that the prosecutor offered him and Costa the opportunity to plead guilty to two counts of manslaughter, with the imposition of consecutive sentences, provided that both accepted the offer. The defendant recollects that the plea arrangement would have included a combined sentence of from twenty-four to twenty-six years; the defendant asserts that, given then-available statutory good time and reductions for time served, had he been able to accept the plea, he would have been released in 2004. The defendant maintains that he wanted to accept the offer, but that Costa refused to do so. According to the defendant, if he were released from custody, he would live with his sister and would work at a restaurant that she and her husband own.

The other affidavits accord with the defendant's recollection. Costa recalled that the plea arrangement would have required that the defendants "agree to a sentence that would have each of [them] serve another eight or so years in prison"[2] and that "[t]he offer was a take it or leave it for both of [them] together." The other affiants did not recall the length of the proposed sentence.

According to the affidavit by the defendant's sister, during the 1994 retrial, she "learned that the Commonwealth had offered [the defendant] and his codefendant . . . a plea to manslaughter provided that both of them accepted it. [The defendant] said he wanted to accept the plea. In a hallway outside the courtroom, [she] saw [Costa's] lawyer . . . get on his knees and beg [Costa] to take the plea, but he refused." The defendant's attorney and his associate each recalled that Costa's attorney told them that he had "gotten on his knees and begged Costa to accept the plea, but he still refused."

---

[2] The shooting took place on February 19, 1986. The defendant and his codefendants were arrested on February 23, 1986. The defendant and Costa originally were sentenced on April 11, 1988. On December 28, 1992, this court reversed the judgments, set aside the verdicts, and remanded the cases for a new trial, and the defendant was released on bail. On February 3, 1994, the defendant and Costa were convicted after retrial. The defendant asserts that, at the time the plea agreement was proffered, he had been incarcerated for four years and four months.

The defendant's attorney averred that, in November 2020, he spoke with the assistant district attorney who prosecuted the case. That assistant district attorney, who is now a Superior Court judge, recalled that there had been a plea offer that had been approved by the district attorney. She further recalled that it was her practice at the time to "require package pleas in cases involving codefendants." She did not remember the specific terms of the offer. The defendant's attorney also explained in his affidavit that he had informed the Commonwealth, either through the assistant district attorney who prosecuted the case or through a first assistant district attorney, that the defendant wished to accept the offer and "urged that it be accepted despite Costa's refusal."

The Commonwealth agrees that the defendant and Costa received a plea offer that was contingent on acceptance by both of them. The Commonwealth takes no stance on the specific terms of the arrangement.

2. Discussion. A "package deal" plea agreement is a plea arrangement under which "the government accepts a defendant's guilty plea on the condition that his [or her] co-defendant(s) also plead guilty." United States v. Hodge, 412 F.3d 479, 489

(3d Cir. 2005).[3]  The defendant argues that a prosecutor's offer to participate in a package agreement violates his rights to due process under the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights; the defendant maintains that such an offer violates the due process rights of the defendant who receives the offer, because the defendant's ability to plead is arbitrarily and unfairly made contingent upon the willingness of a codefendant to do so.  The defendant contends, therefore, that the plea offer he received in 1994 was a violation of his due process rights and that the appropriate remedy is to enforce the 1994 plea offer, even though Costa refused to accept it at the time.

The Commonwealth argues that the defendant has waived any claims he might have concerning the 1994 plea offer, because he failed to raise them when he moved for a new trial in 2005.  The Commonwealth also argues that the package plea offer did not infringe upon the defendant's due process rights.

Ordinarily, "[w]e review the denial of a motion brought under Mass. R. Crim. P. 30 (a) . . . for abuse of discretion or

---

[3] Package plea deals also have been described as "wired" pleas, United States v. Knight, 981 F.3d 1095, 1102 (D.C. Cir. 2020); "locked" pleas, United States v. Hodge, 412 F.3d 479, 482 (3d Cir. 2005); "contingent" pleas, State v. Solano, 150 Ariz. 398, 401 (1986); "tied" pleas, State v. Hanslovan, 147 Idaho 530, 534 (2008); and "linked" pleas, People v. Wyatt, 2 A.D.3d 218, 219 (N.Y. 2003).

error of law." Commonwealth v. Perez, 480 Mass. 562, 567 (2018). Where, however, "a defendant claims that a judge has made an error of constitutional dimension, we accept the judge's subsidiary findings of fact absent clear error . . . but review independently the application of constitutional principles to the facts found" (quotations and citation). Id. at 567-568. The defendant's argument here is constitutionally based, and thus we review the denial of his motion de novo.

a. New and substantial question. As an initial matter, we consider whether the defendant's claim presents a new and substantial question. Under G. L. c. 278, § 33E, a defendant "is entitled to review of the denial of his [or her] motion . . . if and only if [the defendant] can show that he [or she] is raising an issue that is 'new and substantial.'" Commonwealth v. Gunter, 459 Mass. 480, 488, cert. denied, 565 U.S. 868 (2011). "An issue is not 'new' within the meaning of G. L. c. 278, § 33E, where either it has already been addressed, or . . . it could have been addressed had the defendant properly raised it . . . ." Commonwealth v. Ambers, 397 Mass. 705, 707 (1986). Accordingly, "[i]f a defendant fails to raise a claim that is generally known and available at the time of trial or direct appeal or in the first motion for postconviction relief, the claim is waived." Rodwell v. Commonwealth, 432 Mass. 1016, 1017-1018 (2000). A claim is deemed waived under G. L. c. 278,

§ 33E, however, only if the defendant previously had a "genuine opportunity" to raise it (citation omitted). See Mains v. Commonwealth, 433 Mass. 30, 33 (2000). See also Rodwell, supra ("the waiver principles that we apply pursuant to [G. L. c. 278,] § 33E," are similar to "the waiver rules expressed in" Mass. R. Crim. P. 30 (c) (2), which provides that claim is not waived if it "could not reasonably have been raised in the original or amended motion"). A genuine opportunity did not exist if the "theory on which the [defendant's argument relies] was not sufficiently developed at the time of [trial, in a direct appeal, or in a prior motion for postconviction relief]" (citation omitted). Mains, supra at 34.

Here, the single justice determined that the defendant's motion to enforce the 1994 plea offer "raises a new and substantial question regarding the scope of constitutional protections afforded a defendant during the plea-bargaining process." The Commonwealth, however, argues that the defendant's claim is not new, because he had had prior opportunities to raise the issue, and thus the claim has been waived. The defendant maintains that he has not waived the claim, because the theory on which it relies was not available prior to 2012, when the United States Supreme Court issued its decisions in two companion cases, Lafler v. Cooper, 566 U.S. 156 (2012), and Missouri v. Frye, 566 U.S. 134 (2012).

In both Frye, 566 U.S. at 143, and Lafler, 566 U.S. at 174, the Court held that, at least in certain instances, a fair trial may not suffice to cure a violation of a defendant's constitutional rights during pretrial plea bargaining.  In Frye, supra at 138-139, defense counsel failed to advise his client of a prosecutor's plea offers, and the offers expired; the defendant eventually pleaded guilty on more severe terms than he would have had if he had accepted the original offers.  The Court held that the defendant's right under the Sixth Amendment to the United States Constitution to the effective assistance of counsel applies to plea bargaining, and remanded the matter to the trial court to determine whether defense counsel's failure to inform the defendant resulted in Strickland prejudice.[4]  Id. at 147, 151.  The Court reasoned that "it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process."  Id. at 143-144.

---

[4] In Strickland v. Washington, 466 U.S. 668, 687 (1984), the United States Supreme Court held that, to establish that "counsel's assistance was so defective as to require reversal of a conviction," a defendant must show, first, "that counsel's performance was deficient," and second, that "the deficient performance prejudiced the defense."  The Court in Missouri v. Frye, 566 U.S. 134, 148 (2012), held that there is Strickland prejudice in the plea bargaining context if a defendant can show there is a "reasonable probability [the defendant] would have accepted the earlier plea offer" absent deficient performance by counsel and "there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented."

In Lafler, supra at 160-161, the defendant rejected the prosecutor's plea offers due to erroneous advice by his attorney, and was convicted at trial. The Court held that defense counsel's faulty advice violated the defendant's Sixth Amendment right to the effective assistance of counsel. Id. at 174. Furthermore, the Court held, the fact that the defendant had had a fair trial did not "wipe[] clean any deficient performance by defense counsel during plea bargaining." Id. at 169. As a remedy, the Court ordered the State to reoffer the defendant the original plea agreement. Id. at 174.

The defendant relies upon Lafler, 566 U.S. at 174, and Frye, 566 U.S. at 143-144, to argue that the 1994 plea offer should be enforced, regardless of whether he subsequently received a fair trial. At the time of Lafler, supra, and Frye, supra, this court had not endorsed the enforcement of an expired plea offer as a remedy. See Commonwealth v. Mahar, 442 Mass. 11, 27 (2004) (Sosman, J., concurring) ("There is no basis for ordering the prosecutor to revive the withdrawn offer as a remedy for defense counsel's deficient advice concerning the original plea offer"). See also Lafler, supra at 183 (Scalia, J., dissenting) ("It is a remedy unheard of in American jurisprudence -- and, I would be willing to bet, in the jurisprudence of any other country"). The Court's holdings in

Lafler, supra, and Frye, supra, obviously were not available to the defendant in 2005, when he moved for a new trial, nor in 2009, when he filed a gatekeeper petition seeking leave to appeal from the denial of that motion.  The defendant therefore lacked a genuine opportunity to raise this claim prior to the present motion.  See Mains, 433 Mass. at 33 (no genuine opportunity to raise claim until after issuance of United States Supreme Court decisions on which claim was based).

The Commonwealth argues that the defendant had a previous opportunity to raise a claim that relied upon Lafler, 566 U.S. at 174, and Frye, 566 U.S. at 143-144, because he actively was pursuing litigation in this case in 2012.  In that year, however, the defendant was litigating the motion for a new trial that he had filed in 2005, following this court's remand for further findings in 2009.  See DiBenedetto, 458 Mass. at 672-673.  This court retained jurisdiction over the case while it was remanded to the Superior Court, and then, in 2016, reinstated the defendant's 2009 appeal once the Superior Court judge's "further hearing and findings" enabled us to decide the issue the defendant had raised in 2005.  See DiBenedetto, 475 Mass. at 437-438.  We concluded that the defendant was not required to file a new gatekeeper petition pursuant to G. L. c. 278, § 33E, in order to have his appeal reinstated, because "a single justice already determined in 2009 that the

defendant's motion for a new trial raised a new and substantial issue worthy of consideration by the full court."  Id. at 437. The defendant was not able to raise a new issue in his petition to reinstate his appeal, because, had he done so, he would have had to submit a new gatekeeper petition pursuant to G. L. c. 278, § 33E.  See id. at 438 n.12.  The defendant therefore did not have an opportunity to raise a new claim during the period of litigation between 2012 and 2016.  Accordingly, he has not waived his claim challenging the constitutionality of the plea offer that he was presented in 1994.

We also agree with the single justice that the defendant's claim is "substantial."  To be "substantial," a claim must present a "meritorious issue . . . worthy of consideration by an appellate court."  Gunter, 459 Mass. at 487.  As the single justice explained, the issue presented here -- whether package agreements are consistent with a defendant's rights to due process -- has been a subject of disagreement among judges in the Superior Court, and has not been addressed by this court since the United States Supreme Court issued its decisions in Lafler and Frye.  Accordingly, we conclude that the defendant has presented a "new and substantial question."

b.  Plea bargaining.  Prosecutors have "substantial freedom to exercise their discretion in plea bargaining."  Commonwealth v. Smith, 384 Mass. 519, 522 (1981).  It is the prosecutor's

role to determine, on behalf of the Commonwealth, whether the public interest would benefit from a plea agreement. See Commonwealth v. Gordon, 410 Mass. 498, 500 (1991), S.C., 422 Mass. 816 (1996). A defendant therefore has "no right to insist that the prosecutor participate in plea bargaining." Smith, supra. The discretion granted to the prosecutor in plea bargaining "rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review" (citation omitted). Commonwealth v. Latimore, 423 Mass. 129, 136 (1996). Judicial supervision of prosecutorial discretion over plea bargaining could "threaten[] to chill law enforcement by subjecting the prosecutor's motives and [decision-making] to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy" (citation omitted). United States v. Armstrong, 517 U.S. 456, 465 (1996).

That is not to say that there are no constraints on the prosecutor's actions in plea bargaining. See Lafler, 566 U.S. at 168. To the contrary, "[t]his phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." Santobello v. New York, 404 U.S. 257, 262 (1971). Hence, "[d]ue process requires that '[a] "plea is valid only when the defendant offers it voluntarily, with sufficient

awareness of the relevant circumstances . . . and with the advice of competent counsel"'" (citation omitted). Commonwealth v. Roberts, 472 Mass. 355, 362 (2015). Moreover, a judge may "enforce a plea agreement over the Commonwealth's objection if [the judge] finds that the defendant has reasonably relied on a prosecutor's promise to his or her detriment." Commonwealth v. Francis, 477 Mass. 582, 585 (2017).

This court previously has suggested that package plea offers do not violate a defendant's due process rights. In Smith, 384 Mass. at 520, the defendant was tried with a codefendant on charges of murder in the first degree. The prosecutor indicated that he would accept a guilty plea to murder in the second degree from the defendant "only if [his codefendant] also pleaded guilty to murder in the second degree." Id. At first, the codefendant rejected the offer, and thus prevented the defendant from accepting it. Id. After jury deliberations began, however, the codefendant pleaded guilty to murder in the second degree with the approval of the prosecutor. Id. at 521. Thereafter, the defendant attempted to plead to murder in the second degree, but "the prosecutor opposed it," and the defendant was convicted of murder in the first degree. Id. The judge denied the defendant's motion for a new trial because he concluded that the plea offer had expired once the jury began deliberations and therefore was no longer enforceable

over the Commonwealth's objection. Id. We affirmed. Id. at 520. While the defendant did not challenge the constitutionality of the package arrangement that he was offered, we observed in passing that "[s]uch an arrangement has survived challenge." Id. at 520 n.2. In affirming the trial judge's ruling, we reasoned that "[t]he defendant is in no worse position than he would have been if the prosecutor had made no plea bargain offer at all," because "the defendant is left with the adequate remedy of having a trial." Id. at 522.

The defendant maintains that the United States Supreme Court's reasoning in Lafler, 566 U.S. at 169-170, and Frye, 566 U.S. at 143-144, calls into question this court's reasoning in Smith, 384 Mass. at 522. In contrast to this court's holding in that case, the United States Supreme Court in Lafler, supra at 166, observed that "[e]ven if the trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence." While defendants have "no right to be offered a plea," the State "nonetheless [must] act in accord with the dictates of the Constitution" once it decides to engage in plea bargaining (citations omitted). Id. at 168. The defendant contends that the offer of the package agreement violated his rights to due process and, therefore, in order to cure the

injury, the terms of the offer should be enforced.[5]  See <u>Lafler</u>, <u>supra</u> at 166.

c.  <u>Fundamental right</u>.  The defendant argues that the condition attached to the plea offer -- that Costa also had to plead guilty in order for the defendant to plead to a lesser charge -- violated the defendant's fundamental right to choose whether to accept or reject the offer.  According to the defendant, the package deal unfairly impeded his ability to enter into a plea agreement with the Commonwealth, because the success of the plea arrangement turned on Costa's willingness to plead, a factor over which the defendant had no control.

---

[5] Prior to 2012, at least four United States Circuit Courts of Appeals, and three State appellate courts, had rejected challenges to package plea deals where a defendant could not plead guilty because a codefendant had rejected the terms of the offer.  See <u>United States</u> v. <u>Gonzalez-Vazquez</u>, 219 F.3d 37, 43 (1st Cir. 2000); <u>United States</u> v. <u>Gonzales</u>, 65 F.3d 814, 823 (10th Cir. 1995), vacated on other grounds, 520 U.S. 1 (1997); <u>United States</u> v. <u>Gonzalez</u>, 918 F.2d 1129, 1134 (3d Cir. 1990), cert. denied, 498 U.S. 1107, 499 U.S. 968, and 499 U.S. 982 (1991); <u>United States</u> v. <u>Wheat</u>, 813 F.2d 1399, 1405 (9th Cir. 1987), aff'd, 486 U.S. 153 (1988); <u>State</u> v. <u>McInelly</u>, 146 Ariz. 161, 165 (1985); <u>People</u> v. <u>Barnett</u>, 113 Cal. App. 3d 563, 574 (1980); <u>Bostic</u> v. <u>State</u>, 184 Ga. App. 509, 511 (1987).  Since the United States Supreme Court decided <u>Frye</u> and <u>Lafler</u> in 2012, all appellate decisions of which we are aware have rejected constitutional challenges to package plea deals.  See <u>United States</u> v. <u>Knight</u>, 981 F.3d 1095, 1108 (D.C. Cir. 2020); <u>United States</u> v. <u>Martin</u>, 516 Fed. Appx. 433, 442-443 (6th Cir.), cert. denied, 571 U.S. 919 and 571 U.S. 936 (2013); <u>Lampkin</u> v. <u>State</u>, 495 P.3d 529 (Nev. Ct. App. 2021); <u>State</u> v. <u>Drain</u>, 2020-Ohio-701, at ¶¶ 12-15.

We evaluate a claim that the Commonwealth has impaired a fundamental right under the framework of substantive due process. See Dutil, petitioner, 437 Mass. 9, 13 (2002). Substantive due process is guaranteed by the Fourteenth Amendment to the United States Constitution, as well as by arts. 1, 10, and 12 of the Massachusetts Declaration of Rights. See Kligler v. Attorney Gen., 491 Mass. 38, 55 (2022). "Substantive due process prevents the government from engaging in conduct that shocks the conscience . . ." (quotations and citation omitted), Vega v. Commonwealth, 490 Mass. 226, 231 (2022), or that "unduly interfere[s] with rights that are deemed fundamental," Kligler, supra. Where fundamental rights are involved, governmental conduct is "subject to strict scrutiny, an exacting form of judicial review requiring that the statute be narrowly tailored to further a compelling and legitimate government interest" (quotation and citation omitted). Id.

"Fundamental rights are those rights that are explicitly or implicitly guaranteed by the Constitution" (quotation and citation omitted). Kligler, 491 Mass. at 55. We have recognized that the Massachusetts Declaration of Rights "may demand broader protection for fundamental rights than the Federal Constitution" (citation omitted). Id. at 60. We adopt a "comprehensive approach" to identifying fundamental rights under the Massachusetts Declaration of Rights. Id. Under this

approach, the court must use "reasoned judgment" to identify "interests of the person so fundamental that the State must accord them its respect." Id. at 58, quoting Obergefell v. Hodges, 576 U.S. 644, 664 (2015).

We conclude that the package plea offer did not violate the defendant's fundamental due process rights under either the United States Constitution or the Massachusetts Declaration of Rights. "It is undisputed that a criminal defendant has no constitutional right to a plea bargain." Commonwealth v. Marinho, 464 Mass. 115, 127 (2013). See Lafler, 566 U.S. at 168. Rather, "[t]he decision whether the Commonwealth enters into a plea agreement with the defendant is the prosecutor's alone." Francis, 477 Mass. at 585. In deciding whether to enter into a plea agreement, the prosecutor may consider, among other factors, "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." Wayte v. United States, 470 U.S. 598, 607 (1985). The prosecutor therefore may choose whether to extend a plea offer to a defendant due to factors that are outside the defendant's control, so long as those factors are not "based upon an unjustifiable standard such as race, religion, or other arbitrary classification" (citation omitted). Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). See

Commonwealth v. Wilbur W., 479 Mass. 397, 409 (2018).  Contrast Marshall v. Jerrico, Inc., 446 U.S. 238, 249-250 (1980) ("A scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions"); United States v. Redondo-Lemos, 955 F.2d 1296, 1297-1298, 1301-1302 (9th Cir. 1992), overruled on other grounds by United States v. Armstrong, 48 F.3d 1508 (9th Cir. 1995) (remanding to District Court to determine whether government purposely gave more favorable plea bargains to women as compared to men).  For example, a prosecutor may prioritize the wishes of a victim, and may choose to enter into a plea agreement with a defendant only if a victim or a victim's family first approves the agreement. See Latimore, 423 Mass. at 137.  There is no apparent reason, then, why a prosecutor may not communicate to a defendant that the prosecutor will agree to a plea only if a codefendant also agrees to plead guilty.

In support of his argument that a package deal plea offer violates a fundamental right, the defendant points to two United States Supreme Court decisions.  He first relies on language in Bordenkircher, 434 U.S. at 363, wherein the Court stated that a defendant's due process rights are violated if the defendant is not "free to accept or reject the prosecution's offer."  That

case, however, was about the defendant's right freely to reject a plea offer without facing retaliation for doing "what the law plainly allows him [or her] to do." Id. There is nothing in the Court's holding to suggest that a defendant has a right to accept a plea offer under terms to which the prosecutor has not agreed. See id. at 365. The defendant also cites Jones v. Barnes, 463 U.S. 745, 751 (1983), in which the Court stated that a defendant "has the ultimate authority to make certain fundamental decisions regarding the case," including "whether to plead guilty." Jones, supra, however, concerned the authority that a defendant has vis-à-vis the defendant's attorney to control certain pretrial decisions and decisions at trial. See id. at 746. The cited language simply explained that the defendant's attorney may not override the defendant's decision whether to plead guilty. See id. at 751.

d. Rational basis review and procedural due process. Governmental conduct that does "not have an impact on fundamental rights . . . [is] subject to rational basis review, a less exacting standard of review whereby a challenged [action] will pass constitutional muster . . . if it bears a reasonable relation to a permissible legislative objective" (quotations and citation omitted). Kligler, 491 Mass. at 55. Moreover, if a statute or governmental action has survived substantive due process scrutiny, "[p]rocedural due process requires that [it]

be implemented in a fair manner" (quotation and citation omitted). See Aime v. Commonwealth, 414 Mass. 667, 674 (1993).

The defendant contends that the package plea offer did not serve a legitimate public purpose, and was arbitrary and unfair. We conclude that package plea offers serve a legitimate public purpose and that such offers are not inherently unfair to a defendant. Accordingly, they pass constitutional muster. See Kligler, 491 Mass. at 73.

When a prosecutor enters into a plea agreement with a defendant, the prosecutor agrees to "limit[] the defendant's criminal liability." Newton v. Rumery, 480 U.S. 386, 410 (1987) (Stevens, J., dissenting). In return, the Commonwealth avoids trial, and thereby conserves "scarce judicial and prosecutorial resources." Brady v. United States, 397 U.S. 742, 752 (1970). Where a prosecutor jointly tries two or more defendants, the only way for the Commonwealth to avoid the effort and expense of a trial is for each defendant to plead guilty; if only one defendant pleads guilty, the Commonwealth still must try those defendants who did not waive the right to trial. See Commonwealth v. Hubbard, 457 Mass. 24, 25 (2010) (by pleading guilty defendant waives right to trial by jury). In proffering a package plea arrangement, a prosecutor can be assured that each defendant will receive lenient treatment only if, in return, the Commonwealth obtains the complete avoidance of

trial.  See In re Ibarra, 34 Cal. 3d 277, 289 n.5 (1983) (package plea deal "may be a valuable tool to the prosecutor" because "prosecutor may be properly interested in avoiding the time, delay and expense of trial of all the defendants").

In the defendant's view, package plea offers are unnecessary, and therefore reliance upon them is arbitrary and unfair, because individual plea offers are a more effective means of conserving the Commonwealth's resources.  The defendant maintains that a package deal is effective only if all defendants choose to plead, because otherwise all defendants must be tried.  Individual plea offers, by contrast, allow the Commonwealth to save on costs by trying fewer defendants, even if not all defendants agree to plead.

Here, the defendant contends, an individual trial of Costa would have been less costly than the joint trial that did take place, because the former option would have saved the Commonwealth from having to present evidence that pertained to the defendant's, and not Costa's, guilt.  Furthermore, had the prosecutor allowed the defendant to plead, and solely tried Costa, the Commonwealth would have had to respond to the objections and arguments of only one defense attorney, rather than two.  The defendant notes that, while the joint trial with Costa lasted fifteen days, Tanso's trial took place over only

eight days.  The defendant asserts that, if the prosecutor's goal was to conserve resources, that goal would have been better served had she allowed the defendant to plead to manslaughter.

We disagree with the defendant's reasoning.  In plea bargaining, a prosecutor must make difficult calculations about the trade-offs between seeking a harsher sentence for a defendant and sparing the Commonwealth the burden of a trial.  See Wayte, 470 U.S. at 607.  It is for the prosecutor, and the prosecutor alone, to decide in any given instance whether these trade-offs are in the public interest.  See Francis, 477 Mass. at 585.

Here, the prosecutor reasonably could have decided that it would be worthwhile to allow the defendant to plead guilty to manslaughter only if, thereby, trial were altogether avoided.  Consider, for example, that the prosecutor's focus could have been on saving the victims' families from the ordeal of sitting through a retrial.  See Commonwealth v. Smith, 387 Mass. 900, 913 (1983) (Abrams, J., concurring) (retrial "forces the friends and family of the victim to relive the trauma of the crime and again suffer the ordeal of a trial").  An individual plea offer would have permitted the defendant a more lenient sentence without serving this legitimate interest.  Accordingly, we discern no reason to conclude that the package plea offer was arbitrary or unfair.  See County of Sacramento v. Lewis, 523

U.S. 833, 845 (1998) ("[t]he touchstone of due process is protection of the individual against arbitrary action of government" [citation omitted]); Commonwealth v. Blake, 454 Mass. 267, 283 (2009) ("Procedural due process, at a bare minimum, requires that the proceedings against a defendant not be fundamentally unfair").

e. Coercion. Finally, the defendant contends that the offer of a package arrangement was designed to pressure him into coercing Costa into pleading guilty. Nothing in the record, however, suggests that this was the prosecutor's motive. Moreover, neither the defendant nor Costa pleaded guilty, and thus there is no risk that the plea offer had a coercive effect. See United States v. Gonzalez-Vazquez, 219 F.3d 37, 43 (1st Cir. 2000) (concern "that the defendant may have been coerced into giving up his right to go to trial obviously does not apply when the defendant does go to trial"); United States v. Wheat, 813 F.2d 1399, 1405 (9th Cir. 1987), aff'd, 486 U.S. 153 (1988) ("defendant cannot complain that there was any coercion or element of involuntariness here, because neither he nor his codefendant accepted the [package deal plea offer]").

We agree, however, that there are legitimate concerns about the potential for package plea agreements to be coercive. While package plea agreements "are not per se involuntary," they present a risk that "[o]ne defendant may be coerced into

pleading guilty by a co-defendant who believes he is getting a good deal under the package deal." United States v. Mescual-Cruz, 387 F.3d 1, 7 (1st Cir. 2004), cert. denied, 543 U.S. 1175 and 543 U.S. 1176 (2005). Furthermore, when there is a family relationship between two defendants, "one defendant . . . [might] involuntarily sacrifice his [or her] own best interests for those of a family member . . . in a belief that the package deal will benefit the other." Id. See Bordenkircher, 434 U.S. at 364 n.8; Hodge, 412 F.3d at 489; State v. Bey, 270 Kan. 544, 554-555 (2001); State v. Hoang Muc Danh, 516 N.W.2d 539, 542 (Minn. 1994). To mitigate these concerns, courts in other jurisdictions have required that, for a package deal to be enforced, the parties "must notify the . . . court that a package deal exists," and the court must inquire into the voluntariness of the package agreement "with special care." Hodge, supra at 489-491. See Mescual-Cruz, supra at 8; United States v. Caro, 997 F.2d 657, 659-660 (9th Cir. 1993); State v. Solano, 150 Ariz. 398, 402 (1986); In re Ibarra, 34 Cal. 3d at 288-290; Bey, supra at 555; Howell v. State, 185 S.W.3d 319, 335-336 (Tenn. 2006).

We conclude that courts in Massachusetts should adopt a similar approach. Rule 12 (a) (3) of the Massachusetts Rules of Criminal Procedure, as amended, 482 Mass. 1501 (2019), states that a judge "may accept a plea of guilty . . . only after first

determining that it is made voluntarily with an understanding of the nature of the charge and the consequences of the plea."  "A plea is voluntary if entered without coercion, duress, or improper inducements" (citation omitted).  Commonwealth v. Sherman, 451 Mass. 332, 338 (2008).  Accordingly, during the plea colloquy, "a judge must conduct a real probe of the defendant's mind to determine that the plea is not being extracted from the defendant under undue pressure" (quotations and citation omitted).  Id.  This inquiry is rendered incomplete if the judge is not made aware that the defendant's codefendants had reason to pressure the defendant to plead guilty.

Accordingly, from the date of the issuance of the rescript in this case, if a plea agreement "is conditioned on the cooperation of more than one defendant," the plea judge must be informed of the "package nature of the deal."[6]  Caro, 997 F.2d at 660.  In the absence of such information, the judge's probe into the voluntariness of the defendant's plea cannot account for the "risks inherent in package deals."  Mescual-Cruz, 387 F.3d at 9.  Further, in determining whether a defendant whose plea was pursuant to a package agreement "was subject to undue pressure to plead guilty" (citation omitted), Sherman, 451 Mass.

---

[6] We ask this court's standing advisory committee on the rules of criminal procedure to propose a suitable amendment to Mass. R. Crim. P. 12 to delineate these requirements.

at 338, the judge must consider "the traditional types of coercion and the unique pressure from a co-defendant or family member that might be present in a package deal," Mescual-Cruz, supra.  Consequently, a defendant must "be allowed to withdraw his or her guilty plea if the [Commonwealth] fails to fully inform the trial court of the nature of the [package] plea." Bey, 270 Kan. at 555.

3.  Conclusion.  The Superior Court judge's order denying the defendant's motion to enforce the plea bargain is affirmed.

So ordered.