**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1524-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TROY J. WASHINGTON,

     Defendant-Appellant.

_____

> Submitted January 22, 2019 – Decided January 31, 2019
>
> Before Judges Haas and Sumners.
>
> On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 11-02-0273.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Monique D. Moyse, Designated Counsel; Carolyn V. Bostic, on the brief).
>
> Gurbir S. Grewal, Attorney General, attorney for respondent (Regina M. Oberholzer, Deputy Attorney General, of counsel and on the brief).
>
> Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Troy J. Washington appeals from the May 12, 2017 Law Division order denying his petition for post-conviction relief (PCR) following an evidentiary hearing. We affirm.

We incorporate herein the procedural history and facts set forth in our prior opinion on defendant's direct appeal from his conviction on the underlying offenses. State v. Washington, No. A-1818-12 (App. Div. Mar. 25, 2015) (slip op. at 1-5), certif. denied, 222 N.J. 18 (2015). The following facts are most pertinent to the issues raised in this appeal:

> The State presented its case through the testimony of Dana Valeri, Lake Estates Condominium Assistant Property Manager, Emelinda Owens, Lake Estates Condominium resident, and three East Brunswick policemen, Officer Crispin Farrace, Detective Michael Smith, and Sergeant Sean Googins. The facts pertinent to this appeal are as follows.
>
> On September 3, 2010, a man entered the office of the Lake Estates Condominium Association and told Valeri that he was looking to rent an apartment unit based upon a referral from someone who worked for FedEx. Valeri told him there were no units available to rent. However, before leaving she had him write down his name and phone number to possibly contact him if a vacancy arose. Suspecting the man was referred by Owens, a Lake Estates resident Valeri believed worked for FedEx, Valeri sent Owens an email with a description of the man to confirm the reference. Owens replied that she did not refer anyone to rent an

apartment. Owens testified that based on the email description, she believed the man was someone she knew as "True."

About two hours later, the man returned to the office. He asked for a business card and permission to use the bathroom. After using the bathroom, the man approached Valeri with a six-inch knife in his hand and demanded money that was stored in a locked cabinet. Valeri cooperated and gave him approximately $2,500 to $3,000. After turning the money over, the man, for no apparent reason, shoved her into a bathroom causing bruises on her body and a bump on her head, and then left the office.

Valeri subsequently called the police, and once they arrived at the office, she told them what happened. The police took pictures of the crime scene and were able to obtain fingerprints from the notebook in which the assailant had written his name and phone number. The fingerprints were found to be a match for defendant. About three weeks later, Valeri identified defendant in a photo array at the police station, stating she was eighty percent sure that he was the man who robbed her. Valeri also made an in-court identification of defendant. In addition, Owens identified defendant in a photo array and in-court as the man she knew as True.

Defendant testified on his own behalf at trial. He asserted that he did not rob Valeri, but she was party to a "scheme" with Owens to steal money from Lake Estates. He arranged with Owens and her boyfriend that he would go to the office to pick up money from Valeri. When defendant first went into the office, Valeri told him to write his name and phone number down on [a] notebook so she could call him later when it was time to get the money. Defendant testified that

3

he returned to the office after speaking with Owens and was given the money by Valeri. He denied having a knife with him and touching or pushing Valeri. He claimed he kept $700 of the money with the remaining amount split between Owens and Valeri.

[Id. at 2-4.]

Based on this evidence, the jury convicted defendant of first-degree armed robbery, N.J.S.A. 2C:15-1; fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4; and disorderly persons simple assault, N.J.S.A. 2C:12-1(a). Id. at 1. The court sentenced defendant to fifteen years in prison, subject to an 85% period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on the robbery and merged weapons offenses, and to a consecutive six-month term for the simple assault offense. Id. at 4.

After we affirmed defendant's convictions and sentence on direct appeal, id. at 6-15, defendant filed his petition for PCR, alleging that his trial attorney provided him with ineffective legal assistance. Among other things, defendant asserted that the attorney failed to adequately investigate the whereabouts of Manuel Roman, an individual who defendant alleged was a partner in the "scheme" to steal money from Lake Estates. Defendant also claimed that "the trial court should have accepted [his] plea" instead of forcing him to go to trial.

The judge found that defendant was entitled to an evidentiary hearing on his petition. At the hearing, defendant claimed that Roman was Owens's boyfriend and that he, Roman, Owens, and Valeri agreed that Valeri would give money from Lake Estates to defendant and make it appear that it had been a robbery. The group would then split the proceeds of the theft. Defendant produced a one-page letter from Roman to support this claim, but did not call him as a witness at the PCR hearing. Defendant asserts that if his attorney had properly attempted to locate Roman in advance of the trial, Roman would have testified in support of his contention that the robbery had been staged, and he would only have been convicted of theft, rather than the more serious robbery, weapons, and assault charges.

Defendant waived his attorney-client privilege and called his attorney as a witness at the hearing. The attorney testified that he represented defendant for about a year prior to the trial. During that period, defendant claimed he was not involved in the robbery and provided the names of several alibi witnesses to the attorney. The attorney filed an alibi notice prior to the trial, but none of the proposed witnesses would support defendant's claim by testifying in court.

The attorney filed a motion to suppress the identification evidence. This motion was heard and denied by the trial court on January 17, 2012, the day

before jury selection was to begin. After the hearing, defendant told the attorney that his alibi claim was false. Instead, defendant claimed for the first time that he, Roman, Owens, and Valeri had actually conspired to stage a robbery in order to steal money from Lake Estates.

At that time, defendant gave the attorney Roman's name, an address, and a telephone number. The attorney immediately added Roman to defendant's witness list, and called his office to have an investigator attempt to locate Roman through a "post office search" and by calling the telephone number. However, Roman did not live at the address defendant provided, and no one ever answered the telephone at the number defendant gave the attorney. Defendant was not able to provide any additional contact information for Roman. The attorney asked Owens on cross-examination whether she had an address or telephone number for Roman, but she did not. The attorney also questioned Owens about her alleged role in the scheme, and called defendant as a witness so he could provide his account to the jury.[1]

---

[1] The attorney also pointed out that even if he could have located Roman, it was by no means certain Roman would have testified on defendant's behalf because, by doing so, Roman "would have been involving himself in . . . a third[-]degree crime."

A-1524-17T1

Under these circumstances, the judge concluded in her written decision that the attorney had done all he could to attempt to locate Roman, especially in light of the fact that defendant waited until the eve of trial to abandon his false alibi claim in favor of his new assertion that the robbery was staged. Therefore, the judge found that the attorney did not provide ineffective assistance. In explaining her decision, the judge stated:

> This court has had the opportunity to observe the demeanor and credibility of [defendant's] trial counsel during the evidentiary hearing and finds his testimony to be very credible. This [c]ourt finds that trial counsel put forth a concerted effort to find any named person that [defendant] presented to him as a potential witness, both under the original alibi defense and the conspiracy defense. The alibi defense was first developed and subsequently failed when [defendant's] witnesses failed to appear in court and testify on [defendant's] behalf. This [c]ourt finds [defendant's] counsel, from the beginning, vigorously attempted to abide by [defendant's] wishes even when [defendant] provided him with witnesses that were unwilling to substantiate an alibi defense for [defendant]. Even when [defendant] failed to provide Mr. Roman's name to his attorney immediately rather than attempt several non-credible defenses.

Turning to defendant's claim that the judge "should have accepted" his plea, defendant failed to present any evidence that he ever pled guilty to any of the offenses prior to the trial. The State and defendant's attorney discussed the possibility of a plea before the suppression hearing on January 17, 2012. At that

7

time, the State had offered to recommend that defendant be sentenced to seven years in prison, subject to NERA, if he pled guilty to robbery, but advised him that the offer would be withdrawn if the hearing proceeded. Defendant elected to reject the plea offer, and the trial court thereafter denied his suppression motion.

Nevertheless, the assistant prosecutor stated that she was willing to ask her supervisors if she could renew the seven-year plea offer, and promised to let defendant and his attorney know the next day if this was still possible. The following day, the prosecutor reported the seven-year offer was still off the table, but that her office would accept a plea if defendant agreed to serve nine years, subject to NERA. Defendant rejected this offer and proceeded to trial.

Perhaps because defendant failed to present any evidence that there had been a plea agreement at any time prior to the trial, the judge did not specifically address defendant's claim that he had pled to an offense in her written decision denying his PCR petition. This appeal followed.

On appeal, defendant's appellant attorney raises the following contentions on defendant's behalf:

POINT I

THE PCR COURT'S FACTUAL FINDINGS DO NOT SUPPORT ITS DETERMINATION THAT

DEFENDANT'S TRIAL COUNSEL RENDERED EFFECTIVE ASSISTANCE TO DEFENDANT DESPITE TRIAL COUNSEL'S FAILURE TO ADEQUATELY INVESTIGATE THE WHEREABOUTS OF MANUEL ROMAN, AND TO CALL HIM AS A TRIAL WITNESS TO SUPPORT THE DEFENDANT'S CONSPIRACY DEFENSE.

A.     The Strickland Standard.

B.     The PCR Court's Denial of Post-Conviction Relief is Not Supported by the Record.

POINT II

THE PCR COURT FAILED TO ADDRESS AND RULE UPON DEFENDANT'S ARGUMENT THAT THE TRIAL COURT ERRED BY NOT ACCEPTING THE DEFENDANT'S GUILTY PLEA, AS WAS BRIEFED AND ARGUED BY DEFENDANT AND HIS PCR COUNSEL, AND THEREFORE, THIS MATTER MUST BE REMANDED TO THE PCR COURT FOR CONSIDERATION.

Having reviewed the record in light of these contentions and applicable law, we cannot agree with defendant's arguments[2] and, therefore, we affirm the judge's denial of defendant's PCR petition.

---

[2] In a pro se supplemental brief, defendant asserts that "the PCR court erred by basing its ruling on hearsay of trial counsel of what other persons would have testified to, and elevated such hearsay testimony over defendant's direct testimony, wherefore the matter should be reversed and remanded to another PCR judge." This argument is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

When petitioning for PCR, the defendant must establish, by a preponderance of the credible evidence, that he or she is entitled to the requested relief. State v. Nash, 212 N.J. 518, 541 (2013); State v. Preciose, 129 N.J. 451, 459 (1992). To sustain that burden, the defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

To establish a prima facie claim of ineffective assistance of counsel, the defendant is obligated to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced his right to a fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987). Under the first prong of this test, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid. Under the second prong, the defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. That is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

10

There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. Further, because prejudice is not presumed, Fritz, 105 N.J. at 52, a defendant must demonstrate with "reasonable probability" that the result would have been different had he received proper advice from his trial attorney. Strickland, 466 U.S. at 694.

Where, as here, the judge conducts an evidentiary hearing, we must uphold the judge's factual findings, "'so long as those findings are supported by sufficient credible evidence in the record.'" State v. Rockford, 213 N.J. 424, 440 (2013) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)). Additionally, we defer to a trial judge's findings that are "'substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy.'" Ibid. (alteration in original) (quoting Robinson, 200 N.J. at 15).

Applying these standards, we discern no basis for disturbing the trial judge's decision to reject defendant's claim that his attorney was ineffective because he was unable to locate Roman on the eve of trial. After observing both defendant and his attorney on the witness stand, the judge specifically found that the attorney credibly demonstrated that he did everything possible to find

11

Roman. The attorney added Roman's name to defendant's witness list; attempted to telephone him; tried to reach him at the stale address defendant's provided; and questioned Owens as to whether she knew how he could be reached. Under these circumstances, there is ample credible evidence in the record to support the judge's conclusion that the attorney performed effectively under the circumstances presented by defendant's late decision to abandon his false alibi claim. Therefore, defendant failed to satisfy either prong of the Strickland test on this point.

While the judge did not specifically rule upon defendant's bald claim that the trial court "should have accepted" his alleged plea, there is no reason to remand this matter for further proceedings. It is well established that where, as here, a PCR issue can be addressed solely upon the trial record, an appellate court can directly review the claim. State v. Castagna, 187 N.J. 293, 313 (2006).

The trial record reveals that defendant never pled guilty at any time to any offense prior to the trial. Instead, he rejected each and every offer the State presented. At the evidentiary hearing, he acknowledged that the assistant prosecutor advised him that she would attempt to obtain permission from her office to renew the seven-year offer, but she was unable to do so. Defendant then rejected the nine-year offer and the matter proceeded to trial.

It is well established that a plea "bargain cannot be imposed upon a defendant and, by the same token, a defendant has no legal entitlement to compel a plea offer or a plea bargain; the decision whether to engage in such bargaining rests with the prosecutor." State v. Williams, 277 N.J. Super. 40, 46 (App. Div. 1994) (citations omitted). Moreover, "a defendant has no right to require the prosecutor to re-offer a plea which has been rejected by the defendant." Id. at 47 (citing United States v. Wheat, 813 F.2d 1399, 1405 (9th Cir. 1987), aff'd, 486 U.S. 153 (1988)).

Contrary to defendant's baseless assertions, there is simply no evidence in either the trial record or the record developed at the PCR hearing to support his claim that he ever pled guilty to an offense or that the judge refused to accept his plea. Therefore, we reject defendant's contention on this point.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1524-17T1