[Cite as *State v. Hughey*, 2025-Ohio-3152.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                         :

    Plaintiff-Appellee,          :

                      No. 114712

v.                                     :

JADEN HUGHEY,                          :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 4, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-683353-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brad S. Meyer, Assistant Prosecuting Attorney, *for appellee.*

Russell S. Bensing, *for appellant.*


MICHAEL JOHN RYAN, P.J.:

{¶ 1} Defendant-appellant Jaden Hughey appeals from the trial court's judgment denying his presentence motion to withdraw his guilty plea. After a thorough review of the facts and pertinent law, we affirm.

**Factual and Procedural History**

{¶ 2} In August 2023, Hughey and his brother, codefendant Jason Wilder, were charged in a 13-count indictment; all counts contained one-, three-, and six-year firearm specifications. The charges, which included aggravated murder with prior calculation and design, stemmed from the fatal shooting of an individual who was in a stolen vehicle belonging to the brothers' mother; two other individuals in the shot-at vehicle were injured. The trial court found Hughey indigent and appointed two attorneys to represent him. The parties engaged in the exchange of discovery. Trial was set for February 5, 2024.

{¶ 3} In December 2023, Hughey, pro se, sought the removal of one of his appointed attorneys. In January 2024, the trial court granted Hughey's request, discharged the subject attorney, and replaced the attorney with substitute counsel. The trial court converted the previously set February 5, 2024 trial date to a pretrial and reset trial for July 10, 2024.

{¶ 4} The exchange of discovery continued, and the parties also engaged in plea negotiations. Hughey sought another continuance of the trial date, which the trial court granted; trial was rescheduled for September 30, 2024. On the September 30 trial date, the trial court allowed Hughey to have a meeting with his father in the courtroom prior to proceeding. On that date, Hughey executed a waiver of his right to a jury trial. The record demonstrates that at that time the trial court had held over 20 pretrial hearings.

{¶ 5} The State placed its plea offer on the record. The sum and substance of the State's plea offer was that Hughey could plead guilty to one count of involuntary manslaughter (amended from aggravated murder with prior calculation and design) and two counts of felonious assault, one count for each of the other two victims who were injured in the shooting; Hughey would also plead guilty to the three-year firearm specifications attendant to the counts. The remaining counts and specifications would be dismissed, and the parties would recommend a definite sentence of between 25 and 32 years to the trial court. The State's offer was a "package deal," meaning that both Hughey and Wilder had to accept it.

{¶ 6} The record reflects that defense counsel had not advised Hughey of the implications the Reagan Tokes Law would have on the sentence because counsel had not realized it would apply. The trial court and all counsel engaged in an in-depth discussion of how the Reagan Tokes Law would apply. The trial court then recessed to give counsel an opportunity to discuss the plea offer with Hughey.

{¶ 7} When court reconvened, there was more discussion about the implication of the Reagan Tokes Law. Hughey and Wilder requested a day's continuance so they could consider the State's offer overnight; the trial court granted the request.

{¶ 8} The following morning, October 1, 2024, the trial court reconvened and counsel for codefendant Wilder indicated that Wilder had an interest in accepting the State's plea offer. Counsel for Hughey stated that Hughey had "changed his mind and [was] willing to accept the offer from the State of Ohio." Tr. 38. The trial

court told Hughey that it wanted to "make sure . . . this is a decision that you don't take lightly. Because . . . once you make it, you can't unring the bell." *Id.* The court explained that "that's why I gave you overnight to consider this so you are not pressured." *Id.* Hughey indicated that he wanted to accept the plea. The State placed the agreement on the record, Hughey stated he wished to proceed, and the trial court began engaging in a plea colloquy with him.

{¶ 9} After engaging with Hughey, the trial court inquired again of Hughey if he understood the terms of the agreement. Hughey indicated that he did not understand — he believed that the minimum sentence he could receive was 16 years, not 25 years. The trial court and the State explained the possible sentence to Hughey again. The trial court asked Hughey if he understood the explanation, and he said he did.

{¶ 10} The court asked him if he had any other questions, and Hughey responded that he did not but he wanted to state on the record that he had been asking for his own copy of discovery and still had not received it. The trial court asked Hughey if he wanted time to talk about discovery with his lawyers and forgo the plea deal. Hughey responded that he was still interested in the plea deal but he wanted to make sure he understood everything he was "agreeing" to. Tr. 49-50. The trial court explained to Hughey that he was not entitled to his own copy of discovery and asked what in particular regarding discovery he needed clarification on; Hughey said that he had just learned the prior day about a phone extraction on codefendant Wilder's phone. The trial court asked Hughey if he wanted to look at the extractions,

to which Hughey responded, "No, I'm just saying that these are things that they are not bringing to the table." Tr. 51. Counsel for codefendant Wilder explained that the rules of discovery do not allow defense counsel to simply give defendants discovery. Hughey's counsel told the court that the only evidence the State intended to use at trial were the text messages from Wilder's phone and "there's nothing in regards to Mr. Hughey's phone that the State of Ohio was going to use." *Id.* at 52. Defense counsel indicated that they went through what the text messages were with Hughey.

{¶ 11} Hughey persisted that his concern was about the evidence generally that the State had against him and that, according to him, "they don't bring it to the table until the last minute." *Id.* at 53. The trial court inquired of Hughey:

> Well, I don't understand. I mean, you are indicating you want to plead, but now you are saying you haven't had a chance to review all the evidence with your attorneys. And that's — those are at odds with each other. You know, if there's something — if you specifically wanted to go over the phone records with your attorney, this Thursday the Court is not going to hold the trial to accommodate a religious holiday and you could have time to go over some of that with your attorney, but I want to make sure. Is that [the phone records] all you are talking about?

*Id.* at 53.

{¶ 12} Hughey twice responded that his concern was limited to the phone records. The trial court conducted an off-the-record sidebar with counsel, and when the parties returned on the record, the court stated that counsel informed it that they had "quickly" shown Hughey some text messages the day before; the court inquired of Hughey if those were the messages he was referring to, and Hughey responded in

the affirmative. *Id.* at 54. The court then allowed time for counsel and the defendants to review the messages.

{¶ 13} When the on-the-record proceedings resumed, Hughey indicated that he had enough time to review the text messages with counsel and he did not have any further questions. The plea colloquy continued without interruption, Hughey pleaded guilty to the charges under the State's offer, and the trial court accepted the pleas as being made "knowingly, voluntarily, and with full understanding of [his] rights . . . ." *Id.* at 76.

{¶ 14} The matter was continued for sentencing. Prior to sentencing, Hughey filed his motion to withdraw his plea; the trial court ordered the full transcript of the plea hearings and held a hearing on the motion. Hughey's counsel stated the ground for Hughey's request to withdraw his plea as follows: Hughey was "coerced" into the plea because his brother, codefendant Wilder, wished to enter a plea and the only way Wilder could plead guilty was if Hughey did as well. *Id.* at 84. Hughey claimed "actual innocence." *Id.*

{¶ 15} The State opposed the motion, noting the time the trial court afforded Hughey to make his decision whether to accept the State's offer. The State further cited a case from this court, *State v. Heisa*, 2015-Ohio-2269 (8th Dist.), for the proposition that "[a] defendant's protestations of innocence are not sufficient grounds for vacating a plea that was voluntarily, knowingly, and intelligently entered." *Id.* at ¶ 23, citing *State v. Minifee*, 2013-Ohio-3146, ¶ 27 (8th Dist.), citing *State v. Bloom*, 2012-Ohio-3805, ¶ 13 (8th Dist.). The *Heisa* Court reasoned that

any defendant who seeks to withdraw his or her plea presumably does so based on some claim of innocence. This court noted that a mere change of heart is not a sufficient ground, however. This court further noted that the trial court had conducted a complete Crim.R. 11 hearing, during which the defendant never made any profession of innocence.

{¶ 16} The State in this case contended that Hughey merely had a change of heart. The State also informed the trial court that the incident was captured on video, and the State had DNA and ballistic evidence linking Hughey to the crime, as well as incriminating correspondence written by Wilder to Hughey.

{¶ 17} After reviewing the relevant procedural posture of the case, including the numerous pretrials, continuances of trial at Hughey's behest, and plea proceedings, along with the relevant factors in deciding a motion to withdraw a plea, the trial court denied Hughey's motion to withdraw his plea and proceeded to sentencing. The trial court sentenced Hughey to a minimum prison term of 27 years and a maximum term of 32 years. Hughey appealed, raising the following sole assignment of error: "The trial court erred in denying Defendant's motion to vacate his plea, in derogation of Defendant's rights under the Fifth and Fourteenth Amendments to the United States Constitution."[1]

---

[1] Codefendant Wilder also sought and was denied withdrawal of his plea. He has appealed, and his appeal is a companion to this case. *See State v. Wilder*, 8th Dist. Cuyahoga No. 114716.

**Law and Analysis**

{¶ 18} Crim.R. 32.1 governs withdrawal of guilty pleas and states that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Generally, a motion to withdraw a guilty plea made before sentencing should be freely and liberally granted. *State v. Xie*, 62 Ohio St.3d 521, 527 (1992).

{¶ 19} A defendant does not, however, have an absolute right to withdraw his or her plea before sentencing. *Xie* at paragraph one of the syllabus. When presented with a presentence motion to withdraw a guilty plea, a trial court "must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.* Following the hearing, the trial court's decision to grant or deny a motion to withdraw a plea will be upheld absent an abuse of discretion. *Id.* at 527. Thus, while a presentence motion to withdraw a guilty plea generally should be "freely and liberally granted," our review of the trial court's denial of such a motion is for an abuse of discretion. A court abuses its discretion when it exercises its judgment in an unwarranted way with respect to a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 20} A trial court's denial of a presentence motion to withdraw is not an abuse of discretion when the record reflects (1) the defendant is represented by highly competent counsel; (2) the defendant was afforded a full hearing, pursuant to Crim.R. 11, before he or she entered the plea; (3) after the motion to withdraw is

filed, the defendant is given a complete and impartial hearing on the motion; and (4) the court gives full and fair consideration to the plea-withdrawal request. *State v. Clifton*, 2022-Ohio-3814, ¶ 65 (8th Dist.), citing *State v. Peterseim*, 68 Ohio App.2d 211 (8th Dist. 1980).

{¶ 21} Ohio courts have also identified the following nonexhaustive list of additional factors a trial court may consider when resolving a presentence motion to withdraw: (5) whether the withdrawal will prejudice the prosecution; (6) whether the timing of the motion was reasonable; (7) the stated reasons for the motion; (8) whether the defendant understood the nature of the charges and the possible penalties; and (9) whether the defendant was perhaps not guilty or had a complete defense. *State v. Fish*, 104 Ohio App.3d 236, 240 (1st Dist. 1995). No one factor is absolutely conclusive. *Id. See also State v. Barnes*, 2022-Ohio-4486, ¶ 16-17.

{¶ 22} Review of the first four factors support a determination that the trial court did not abuse its discretion in denying Hughey's request to withdraw his plea. Regarding the competency of trial counsel, Hughey and Wilder each had two attorneys representing them. The trial court found that they were "represented by highly competent counsel." Tr. 112. The court elaborated that "all four of these attorneys . . . typically handle the most serious cases," including murders and felonious assaults and they all are routinely assigned by the common pleas court trial judges as well as retained by clients. *Id.*

{¶ 23} The record further demonstrates that Hughey was afforded a full and thorough Crim.R. 11 hearing prior to entering his plea. On the trial date, September

30, 2024, the State placed its plea offer on the record, as is routinely done prior to a case proceeding to trial. There was much discussion about the terms of the offer, including some confusion over the impact the Reagan Tokes Law would have on sentencing. After an in-depth discussion about how the law would apply, the trial court recessed to allow Hughey to discuss the plea offer with counsel. When the proceeding reconvened, the parties further discussed the implications of the Reagan Tokes Law. Hughey requested, and was granted, a day's continuance so that he could further consider the State's offer.

{¶ 24} After considering the offer overnight, Hughey indicated the following morning that he wanted to accept the offer. The trial court told Hughey that it wanted to make sure he was not making his decision lightly or feeling pressured and that is why the court gave him overnight to consider the offer. Hughey indicated that he understood and wanted to plead guilty under the State's offer.

{¶ 25} During the trial court's plea colloquy with Hughey, Hughey indicated confusion about the possible sentence and dissatisfaction with the discovery process. After Hughey voiced his confusion and dissatisfaction, the trial court further inquired of him to make sure he was entering the plea knowingly and intelligently.

{¶ 26} Regarding the sentence, both the trial court and the State explained it to him. The trial court asked Hughey whether he understood the explanation, and he indicated he did. Regarding discovery, counsel explained how the discovery process worked (i.e., the client does not get his or her own copy of discovery) and

the trial court recessed to allow Hughey to meet with counsel to review the discovery he had concerns about. After meeting with counsel, Hughey indicated that he had sufficient time to review the discovery and he did not have any further questions. The plea colloquy continued without interruption, and Hughey pleaded guilty to the subject counts pursuant to the State's offer.

{¶ 27} This record demonstrates that Hughey was afforded a full Crim.R. 11 hearing prior to entering his plea.

{¶ 28} The record also demonstrates that Hughey was afforded an impartial hearing on his motion to withdraw his plea. Prior to the hearing, the trial court ordered the transcript from the plea hearing for review. At the hearing, Hughey's counsel indicated that Hughey wished to withdraw his plea because he was claiming actual innocence and he felt coerced to accept the State's offer. As mentioned, a defendant's mere claim of actual innocence is not sufficient to vacate a plea that was knowingly, voluntarily, and intelligently made. *Heisa*, 2015-Ohio-2269, at ¶ 23 (8th Dist.). Hughey did not enter an *Alford* plea, which is a guilty plea with a contemporaneous protestation of innocence. *See North Carolina v. Alford*, 400 U.S. 25 (1970). Rather, Hughey admitted complete guilt at his plea hearing. A "defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he [or she] has completely admitted his [or her] guilt." *State v. Griggs*, 2004-Ohio-4415, ¶ 19. Hughey's new innocence claim was contradicted by his prior statements and admission of guilt.

{¶ 29} Regarding Hughey's claim that he was coerced into the package plea because his brother wanted to plead guilty and he did not want to prevent him from doing so, we note that this court has held that "a defendant is not deprived of due process where an offer of a plea bargain is conditioned on acceptance by codefendants." *State v. Darling*, 2017-Ohio-7603, ¶ 24 (8th Dist.), citing *State v. Hlavsa*, 2000 Ohio App. LEXIS 4885 (8th Dist. Oct. 19, 2000); *State v. Cray*, 1986 Ohio App. LEXIS 9344 (8th Dist. Dec. 18, 1986). "'[T]here is no constitutional right to engage in plea bargaining.'" *Darling* at *id.*, quoting *Cray* at 5, citing *Weatherford v. Bursey*, 429 U.S. 545 (1977), and *Alford*. "When defendants are advised by competent counsel and are protected by the appropriate procedural safeguards, they are presumptively capable of an intelligent and voluntary choice to plead guilty and forgo trial." *Darling* at *id.*, citing *State v. Franks*, 1998 Ohio App. LEXIS 4756 (9th Dist. Oct. 7, 1998), citing *Bordenkircher v. Hayes*, 434 U.S. 357 (1978).

{¶ 30} The *Darling* Court recognized the coercive risk of package deals but reasoned that the process required by Crim.R. 11 for accepting guilty pleas safeguards defendants' due process rights while also preserving the benefits of the plea bargaining process. *See id.* at ¶ 25, citing *Franks* and *United States v. Wheat*, 813 F.2d 1399 (9th Cir. 1987). In *Darling*, this court did not find any coercion in the package plea deal because the defendant failed to advance or demonstrate error with the trial court's Crim.R. 11 plea colloquy. The same is true here.

{¶ 31} Hughey does not contend — nor does the record support — that the trial court or the State coerced him into the plea. To the extent that Hughey's claim

is that family pressured him to plead guilty, this court has previously held that "family pressure 'does not necessarily show coercion,' especially when there is no evidence showing that the defendant was incompetent or incapable of making his [or her] own decision." *State v. Westley*, 2012-Ohio-3571, ¶ 8 (8th Dist.), quoting *State v. Mitchell*, 1995 Ohio App. LEXIS 2803, *5 (11th Dist. June 30, 1995). The record here does not demonstrate any incompetency or incapability of Hughey to make his own decision to plead guilty.

{¶ 32} The aforementioned reasons support a determination that the trial court did not abuse its discretion in evaluating the seventh, eighth, and ninth factors set forth in *Fish*, 104 Ohio App.3d at 240 (1st Dist. 1995); that is, Hughey's stated reasons for the motion, whether he understood the nature of the charges and the possible penalties, and whether he was perhaps not guilty or had a complete defense.

{¶ 33} Under the sixth *Fish* factor — whether the timing of the motion was reasonable — the trial court found that it was. Under the fifth *Fish* factor — whether withdrawal will prejudice the prosecution — the trial court found that it would. The court based its finding on the fact that the trial court was ready for trial on September 30 (it had approximately 40 jurors waiting) and October 1, the State had witnesses subpoenaed and present, and family of the victims were present. The trial court acknowledged that presentence motions to withdraw guilty pleas should be liberally granted but expressed its "concerns about prejudicing the State with so many trial dates and having witnesses here on the trial date" and was "taking that into consideration." Tr. 111. According to Hughey, "the only apparent prejudice to

the State would be having to re-issue subpoenas for its witnesses." Appellant's brief, p. 8. We find that view to be an oversimplification of the potential prejudice to the State.

{¶ 34} For all the reasons discussed, we are unable to find that the trial court abused its discretion by denying Hughey's presentence motion to withdraw his plea. The sole assignment of error is overruled.

{¶ 35} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
JILL FLAGG LANZINGER, J.,* CONCUR

(*Sitting by Assignment: Jill Flagg Lanzinger, J., of the Ninth District Court of Appeals.)